**Pedro Cruz MUNIZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 59090.**

Court of Criminal Appeals of Texas,
En Banc.

Nov. 1, 1978.

Rehearing En Banc Denied Nov. 28, 1978.

Jesse Roy Botello and Ruben Sandoval, San Antonio, for appellant.

Edward J. Walsh, Dist. Atty., Georgetown, for the State.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for the capital murder of a 19 year old South-western University co-ed in the course of an aggravated rape. V.T.C.A., Penal Code Sec. 19.03(a)(2). The jury returned affirmative findings on each question submitted under Article 37.071(b), V.A.C.C.P., and accordingly the punishment was assessed at death.

The finding of guilt is not attacked, but appellant complains errors were committed in the punishment phase of the trial and in the composition of the grand jury.

In order for the death penalty to be assessed, the State must conform to the requirements of Art. 37.071, V.A.C.C.P. The statute requires that two questions be put to the jury, or three if raised by the evidence, all of which must be answered in the affirmative before the death penalty will be assessed. The second of these questions is "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society," Art. 37.071(b)(2), V.A.C.C.P. The jury, when it first announced that it had reached a verdict at the punishment stage, left this question unanswered. The judge sent them back for further deliberations over appellant's objections, with these instructions:

"Ladies and Gentlemen of the jury: You are instructed to return to the jury room and continue your deliberations in this case, to see if you can arrive at an answer to Special Issue Number II, contained in the Charge on Punishment."

Appellant first contends it was error for the trial judge to refuse to grant a mistrial under the provisions of Art. 37.07, Sec. 3(c), V.A.C.C.P., after the jury returned the verdict with question number 2 unanswered.[1] He maintains that the jury had failed to agree on a verdict and a mistrial was therefore required by the statute.

Appellant's statement of the law is, on its face, correct. A mistrial will be

---

1. Art. 37.07, Sec. 3(c), provides:

   "In cases where the matter of punishment is referred to the jury, the verdict shall not be complete until the jury has rendered a verdict both on the guilt or innocence of the defendant and the amount of punishment, where the jury finds the defendant guilty. In the event the jury shall fail to agree, a mistrial shall be declared, the jury shall be discharged, and no jeopardy shall attach."

declared under Art. 37.07, Sec. 3(c) when the jury fails to agree, but our inquiry cannot end there. Art. 37.07, Sec. 3(c) must be read in light of the provisions of Art. 36.31, V.A.C.C.P., dealing with jury disagreements.[2] The trial court in its discretion may dismiss a jury when it has been kept together long enough to make it improbable that the jury can agree. It is well settled that the exercise of discretion in declaring a mistrial will be judged by the amount of time the jury deliberates in light of the nature of the case and the evidence. *Beeman v. State*, 533 S.W.2d 799. The improbability that the jury will agree depends in large measure on the amount of time they have been kept together. *O'Brien v. State*, 455 S.W.2d 283; *Powell v. State*, 17 Tex. Cr.R. 345.

■ The case before the jury in this instance was capital murder. The testimony lasted six days. The jury deliberated only 2 hours and 26 minutes before returning the verdict on punishment with question number 2 unanswered. No abuse of discretion is shown. *Stillwell v. State*, 434 S.W.2d 861; *Verret v. State*, 470 S.W.2d 883; *Broadhead v. State*, 414 S.W.2d 931.

■ Appellant also argues that the verdict as first issued was an informal acquittal under Art. 37.10, V.A.C.C.P.[3] His reliance on this provision under these circumstances is inappropriate. This section allows the trial judge to put a verdict in the proper form when the jury fails to do so. *Franco v. State*, 492 S.W.2d 534. The court can instruct a jury to retire to reconsider the verdict if it does not comply with the charge, the indictment, or the punishment

allowed by the applicable statute. *Stillwell v. State*, supra; *Belton v. State*, 286 S.W.2d 432.

■ An informal verdict is an acquittal only when "it manifestly appear[s] that the verdict is intended as an acquittal." There was no such manifestation here, the verdict was merely incomplete. In order to answer question number 2 the jury would have to vote unanimously for yes or at least 10 for no. They were instructed that if there were not 10 votes for no or unanimity for yes, then no answer would be made. They had no answer when they came out for the first time. This was not an informal acquittal.

■ It is also argued that the judge's supplemental charge to the jury on sending it back for continued deliberation was a coercive *Allen* or dynamite type charge.[4] This contention is without merit. The court merely instructed the jury to continue its deliberations without any additional language which could be interpreted as bringing pressure to bear on the jury. *Stillwell v. State,* supra; *Verret v. State*, supra; *Broadhead*, supra. Furthermore, it does not appear that any objection on this ground was raised at trial.

The first ground of error is overruled.

■ Appellant maintains for the first time on appeal that the trial court committed fundamental error in admitting the testimony of Dr. Holbrook as to his future dangerousness during the punishment phase of the trial. He asserts that this testimony is based on a conversation Dr. Holbrook had with him while in custody and that use of

2. Art. 36.31, V.A.C.C.P., provides:
  "After the cause is submitted to the jury, it may be discharged when it cannot agree and both parties consent to its discharge; or the court may in its discretion discharge it where it has been kept together for such time as to render it altogether improbable that it can agree."

3. Art. 37.10, V.A.C.C.P., provides:
  "If the verdict of the jury is informal, its attention shall be called to it, and with its consent the verdict may, under the direction of the court, be reduced to the proper form. If the jury refuses to have the verdict altered,

it shall again retire to its room to deliberate, unless it manifestly appears that the verdict is intended as an acquittal; and in that case, the judgment shall be rendered accordingly, discharging the defendant."

4. The true *Allen* charge, delivered when the jury is deadlocked, indicates to a juror that some deference is owed the opinion of the majority of his fellow jurors. See *Allen v. U. S.*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). The charge in the present case is not an *Allen* charge. The jurors were instructed merely "to see if" they could arrive at a verdict.

the testimony was a violation of his Fourth, Fifth, Sixth and Fourteenth Amendment rights under the United States Constitution and in contravention of the State's Code of Criminal Procedure. Appellant failed to object to introduction of this testimony at trial. A failure to timely object waives any error in the admission of evidence and presents nothing for review. *Shumake v. State*, 502 S.W.2d 758.[5]

The ground of error is overruled.

■ Appellant's third ground of error is that the evidence was insufficient to support beyond a reasonable doubt the jury's answer of yes to question number 2 during the punishment phase. The prosecution, in addition to relying on the circumstances of the crime, offered the testimony of four reputation witnesses, a psychiatrist, and evidence of appellant's prior record.

The facts of the offense show that appellant followed a young woman, took her off the street into an abandoned bathhouse, raped and beat her, dragged her approximately 200 feet away from the bathhouse and beat her to death with such severity that drops of blood were found scattered as far as fifteen feet from the second struggle area which was close to where the body was hidden under a pile of driftwood. There were nine impact points on the head, accounting for a broken jaw and the caving in of the back of the skull.

The chief of police of the town where appellant lived, the justice of the peace of his home precinct, and the sheriff of his county of residence all testified that they knew appellant and his reputation in the community for being a peaceable and law abiding citizen and that it was bad. The county attorney testified to two prior convictions, one for escape and one for resisting arrest. Appellant was on probation when he committed the instant offense.

The psychiatrist testified that he had interviewed appellant and that appellant had a severely anti-social personality. He stated that appellant knew the difference between right and wrong, exhibited no signs of guilt or remorse, and that he felt there was a reasonable medical certainty appellant would commit similar acts in the future.

■ The evidence, taken as a whole, was sufficient to sustain an answer of yes to question number two. The circumstances of the offense itself can sustain a yes answer if they are severe enough, *Burns v. State*, 556 S.W.2d 270, or can fail to support it if they are not and are unsupplemented by other evidence, *Warren v. State*, 562 S.W.2d 474. Psychiatric testimony on the issue of future dangerousness has been held to be of probative value in this State, *Livingston v. State*, 542 S.W.2d 655, but it is not absolutely necessary to support a yes answer to question number two. In this case the brutal facts of a particularly vicious crime, the reputation evidence, the prior criminal record, and the psychiatric testimony were sufficient to support a yes answer to the issue of appellant's future dangerousness.

The third ground of error is overruled.

The final ground of error challenges the trial court's refusal to quash the indictment for systematic exclusion of Mexican-Americans from the grand jury that indicted him. Challenges to the composition of grand juries are permitted in this State under the authority of Article 19.27, V.A.C.C.P., which states:

"Before the grand jury has been impaneled, any person may challenge the

---

5. In a supplemental brief, appellant points to the recent case of *Estelle v. Smith*, 445 F.Supp. 647 (N.D.Tex.1977) as authority that his belated protest has merit and that admission of the testimony was fundamental error, thereby avoiding the force of the contemporaneous objection doctrine. This Court is not bound by the decisions of lower federal courts, *Flores v. State*, 487 S.W.2d 122. It is well established in this State that psychiatric testimony in the punishment phase is admissible without a pre-psychiatric interview warning against self-incrimination and of the right to remain silent or the presence of counsel at the interview. *Livingston v. State*, 542 S.W.2d 655, 662. Thus, the admission of Dr. Holbrook's testimony was not error at all, much less fundamental error. Furthermore, nothing in the record indicates that appellant was not given such a warning.

array of jurors or any person presented as a grand juror. In no other way shall objections to the qualifications and legality of the grand jury be heard. Any person confined in jail in the county shall upon his request be brought into court to make such challenge."

■ This statute has been interpreted to mean that the array must be challenged at the first opportunity, *Valdez v. State*, 408 S.W.2d 109, which ordinarily means when the grand jury is impaneled. Challenge at this early date is sometimes impossible as when the offense occurs after the grand jury is impaneled. When challenge on impanelment is not possible, the array can be attacked in a motion to quash the indictment before trial commences. *Ex parte Covin*, 277 S.W.2d 109. If the defendant has an opportunity to challenge the array when it is impaneled and does not do so, he may not challenge it at a later date. *Armentrout v. State*, 135 S.W.2d 479.

■ Appellant was arrested in the early morning hours of December 23, 1976. He filed a pauper's affidavit and had counsel appointed for him on December 28. The grand jury that indicted him was impaneled on January 11, 1977. No challenge was made to the array at that time. Appellant was indicted for capital murder on January 12. Thus, appellant was in custody, represented by counsel,[6] and aware, at the time the grand jury was impaneled, that he was to be the object of its scrutiny. He failed to challenge the grand jury at that time but did so several months later in a motion to quash.

6. Counsel was retained by relatives of appellant after the court had appointed an attorney. It is not completely clear from the record whether he was retained on January 6th or 12th, but statements of counsel during oral argument make the 6th the more probable date. Appellant, therefore, had at least one, and probably two, attorneys in ample time to challenge the array when it was impaneled.

7. The Supreme Court has also held that this matter may be waived by failure to assert a timely challenge to the grand jury. In *Michel v. Louisiana*, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83 (1955), addressing the issue of waiver in the context of a Louisiana statute similar to Article 19.27, the Court stated:

"Under the statute, Art. 358, C.C.P. [now Art. 19.27, V.A.C.C.P.], and the construction thereof, it is clear that an accused having opportunity to challenge the array of grand jurors, or any person thereon at the time of impanelment, and who fails to do so has waived the right to so challenge by motion to quash the indictment." *Tyson v. State*, 171 S.W.2d 496, 498.[7]

The ground of error is overruled.

The judgment of the trial court is affirmed.

"It is beyond question that under the Due Process Clause of the Fourteenth Amendment Louisiana may attach reasonable time limitations to the assertion of federal constitutional rights. More particularly, the State may require prompt assertion of the right to challenge discriminatory practices in the make-up of a grand jury. [350 U.S. at 97, 76 S.Ct. 158 at 162]. 'No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the rights. . . .'" [350 U.S. at 99, 76 S.Ct. at 163]

See also *Dumont v. Estelle*, 513 F.2d 793 (5th Cir. 1975).