IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






AP-74,875






RICHARD AARON COBB, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


FROM CAUSE NO. 15054 IN THE 2ND DISTRICT COURT

CHEROKEE COUNTY





 

 MEYERS, J., delivered the opinion of the unanimous Court.


O P I N I O N



 Appellant was convicted in January 2004, of capital murder. Tex. Penal Code 

§ 19.03(a). Based on the jury's answers to the special issues set forth in Texas Code of
Criminal Procedure Article 37.071, sections 2(b) and 2(e), the trial judge sentenced
Appellant to death. Art. 37.071, § 2(g). (1) Direct appeal to this Court is automatic. Art.
37.071, § 2(h). After reviewing Appellant's eight points of error, we find them to be
without merit. Consequently, we affirm the trial court's judgment and sentence of death.

 Appellant argues his first three points of error together. In point of error one, he
asserts that Article 37.071 violates the Fourteenth Amendment to the United States
Constitution because it "implicitly put the burden of proving the mitigation special issue
on appellant rather than requiring a jury finding against appellant on that issue under the
beyond a reasonable doubt standard." In point of error two, he alleges that the trial court
erroneously overruled his motion to hold the statute unconstitutional. In point of error
three, he contends that the trial court erred "by failing to instruct the jury at punishment
that they could only answer the mitigation special issue 'no' if the State proved a negative
answer [to] that issue beyond a reasonable doubt."

 Appellant cites Apprendi v. New Jersey, 530 U.S. 466 (2000), and Ring v. Arizona,
536 U.S. 584 (2002), in support of his claims. He asserts that these cases establish that
the State should bear the burden of proving beyond a reasonable doubt that there is
insufficient mitigation evidence to support a life sentence. We have previously addressed
and rejected this argument. Resendiz v. State, 112 S.W.3d 541, 550 (Tex. Crim. App.
2003); Rayford v. State, 125 S.W.3d 521, 534 (Tex. Crim. App. 2003). Points of error
one, two, and three are overruled.

 In point of error four, Appellant argues that Article 37.071 violates the Eighth
Amendment prohibition against cruel and unusual punishment because it allows the jury
too much discretion and lacks the minimal standards and guidelines necessary to avoid an
arbitrary and capricious imposition of the death penalty. We have previously addressed
and rejected this claim, and we decline to revisit the issue. Jones v. State, 119 S.W.3d
766, 790 (Tex. Crim. App. 2003); Moore v. State, 999 S.W.2d 385, 408 (Tex. Crim. App.
1999). Point of error four is overruled.

 In point of error five, Appellant complains that Article 37.071 violates the Eighth
Amendment as interpreted in Penry v. Johnson, 532 U.S. 782 (2001), because the
mitigation special issue sends "mixed signals" to the jury. We rejected this claim in
Jones. 119 S.W.3d at 790. The mitigation special issue does not send "mixed signals"
because it permits the jury to give effect to mitigating evidence in every conceivable
manner in which the evidence might be relevant. Perry v. State, 158 S.W.3d 438, 448-449 (Tex. Crim. App. 2004). Point of error five is overruled.

 In point of error six, Appellant asserts that the trial court "erred in overruling the
motion to quash the indictment because the grand-jury members were discriminatorily or
otherwise improperly selected." See Castaneda v. Partida, 430 U.S. 482 (1977). 
Challenges to the composition of grand juries are provided for in Article 19.27, which
states:

Before the grand jury has been impaneled, any person may challenge the
array of jurors or any person presented as a grand juror. In no other way
shall objections to the qualifications and legality of the grand jury be heard. 
A person confined in jail in the county shall upon his request be brought
into court to make such challenge.


We have interpreted Article 19.27 to mean that the array must be challenged at the first
opportunity, which ordinarily means when the grand jury is impaneled. Muniz v. State,
672 S.W.2d 804, 807 (Tex. Crim. App. 1984), citing Muniz v. State, 573 S.W.2d 792
(Tex. Crim. App. 1978). If it is impossible to challenge the array at that time, then the
array may be attacked in a motion to quash the indictment before trial commences. Id. 
However, if a defendant had an opportunity to challenge the array when it was impaneled
and failed to do so, he may not challenge it at a later date. Id.

 On September 3, 2002, Appellant was incarcerated in the county jail and had
counsel appointed for him. On September 23, 2002, the grand jury was impaneled, and
Appellant was indicted. The prosecutor verbally notified counsel of the date that the case
would be presented to the grand jury. No challenge was made to the array on or before
September 23, 2002. Appellant was in custody, represented by counsel, and aware, at the
time the grand jury was impaneled, that he was to be the object of its scrutiny. See Muniz,
573 S.W.2d at 796. Appellant's later challenge to the array in his motion to quash the
indictment was untimely. Point of error six is overruled. 

 In point of error seven, Appellant argues that the trial court erroneously excluded
the testimony of two defense expert witnesses, Dr. Seth Silverman and Dr. Joan Mayfield,
because their testimony was relevant to his duress defense. A trial court's admission or
exclusion of evidence is subject to an abuse of discretion standard on appellate review. 
Sells v. State, 121 S.W.3d 748, 766 (Tex. Crim. App. 2003). If the trial court's decision
was within the bounds of reasonable disagreement we will not disturb its ruling. Id. 

 Section 8.05 of the Texas Penal Code provides for the affirmative defense of
duress if "the actor engaged in the proscribed conduct because he was compelled to do so
by threat of imminent death or serious bodily injury to himself or another." TEX. PENAL
CODE § 8.05(a). "Compulsion" exists "only if the force or threat of force would render a
person of reasonable firmness incapable of resisting the pressure." TEX. PENAL CODE
§ 8.05(c). Appellant argued at trial that he shot the victim because he was acting under
duress from his co-defendant, Beunka Adams. Appellant testified that Adams told him,
"[I]f only one does the shooting then only one is leaving," and he believed that Adams
would kill him if he did not do as he was told. 

 Appellant made bills of exception presenting the proposed testimony of Silverman
and Mayfield. Silverman would have testified that Appellant was "more suggestible" to
outside forces and less able "to consider other options" than an "average person" because
he was neglected by his chemically dependent mother as a child and suffered from
depression and chemical dependency as an adult. Mayfield would have testified that
Appellant had cognitive weaknesses that were consistent with fetal-alcohol syndrome;
thus, he was more susceptible to compulsion and less likely to consider other alternatives
than an average person.

 The State argued at trial that compulsion was measured by an objective standard,
rather than a subjective standard, and thus "any testimony from an expert that this
individual . . . is more likely to be compelled than the average person simply is not
relevant or material to the issues in this case as far as duress is concerned." TEX. R.
EVID. 401, 402; TEX. PENAL CODE § 8.05(c). The trial court agreed that the duress
defense was "based upon a person of reasonable firmness" and was "not based upon a
particular Defendant and the particular Defendant['s] susceptibility to influence." The
trial court sustained the State's objection and refused to allow "any testimony that would
relate to whether or not this Defendant is more susceptible to influence or duress than the
average ordinary person of reasonable firmness." 

 The trial court did not abuse its discretion. The inquiry is whether a "person of
reasonable firmness" would be incapable of resisting the pressure to engage in the
proscribed conduct, not whether this particular defendant could have resisted in light of
cognitive weaknesses, depression, chemical dependency, and the neglect he suffered as a
child. It is an objective inquiry rather than a subjective one. See United States v. Willis,
38 F.3d 170, 176 (5th Cir. 1994); Wood v. State, 18 S.W.3d 642, 651 n.8 (Tex. Crim. App.
2000); Kessler v. State, 850 S.W.2d 217, 222 (Tex. App.-Fort Worth 1993, no pet.). Appellant also argues that the expert testimony of Silverman and Mayfield was
admissible to show his state of mind, citing Fielder v. State, 756 S.W.2d 309 (Tex. Crim.
App. 1988). However, Fielder is not applicable here because this is not a case of family
violence in which a defendant raises self-defense. Id.; Art. 38.36(b)(1) and (2). The trial
court did not abuse its discretion in excluding the testimony. Point of error seven is
overruled.

 In point of error eight, Appellant claims that the trial court erroneously denied his
motion for new trial, which was based on allegations of prosecutorial misconduct. 
Appellant alleged in his motion that the State failed to timely disclose evidence that was
necessary to effectively cross-examine and impeach State's witnesses William Thompsen
and Nickie Dement. Thompsen, who was incarcerated in the Cherokee County Jail at the
same time as Appellant, testified at trial that Appellant told him that he planned to falsely
place the blame for the instant offense on Adams, "[s]aying that [Adams] had threatened
him, that if he didn't take part in the killing that he wouldn't live to see the crime either." 
When defense counsel asked Thompsen on cross-examination if he received any benefit
as a result of his cooperation in Appellant's case, he replied: "No, sir, I didn't. There
was no deal made whatsoever." Dement testified that Appellant and Adams robbed the
convenience store where she and Candace Driver worked and kidnapped her, Driver, and
customer Kenneth Vandever, the victim in the instant case. She testified that they were
taken to a second location, where Adams sexually assaulted her, and Adams and
Appellant shot her, Driver, and Vandever. She described the ordeal in detail and
explained Appellant's role in the events that transpired. 

 Appellant argued in his motion for new trial that the prosecutor failed to disclose:
(1) "the full extent of the arrangements and agreements made" concerning the testimony
of Thompsen, and (2) the fact that Dement "was in the process of writing a book for
publication concerning this offense" and "was scheduled to appear for a taping of the
'Montel Williams' Nationally Broadcast Television Show soon after the conclusion of the
trial." Under Brady v. Maryland, 373 U.S. 83 (1963), a prosecutor has an affirmative
duty to turn over material, exculpatory evidence. Impeachment evidence is included
within the scope of the Brady rule. United States v. Bagley, 473 U.S. 667, 676 (1985). 
Evidence withheld by a prosecutor is "material" if there is "a reasonable probability that,
had the evidence been disclosed to the defense, the outcome of the proceeding would
have been different." Id. at 682. A "reasonable probability" is a "probability sufficient to
undermine confidence in the outcome." Id. Thus, a due-process violation has occurred if
a prosecutor: (1) fails to disclose evidence, (2) favorable to the accused, (3) which
creates a probability of a different outcome. Id.; Thomas v. State, 841 S.W.2d 399, 404
(Tex. Crim. App. 1992). 

 At the hearing on the motion for new trial, Appellant introduced into evidence two
letters pertaining to Thompsen. One letter was written by Thompsen to the prosecutor,
Elmer C. Beckworth, Jr., on December 26, 2002. In this letter, Thompsen referenced a
meeting with Beckworth and investigator Randy Hatch, stating: "At our meeting in Mr.
Hatch's office on 12-19-02 you agreed to completely clear this charge as well as try to
have the parole hold lifted so I could get released." Another letter was written by
Beckworth on January 10, 2003. Although it was addressed "to whom it may concern,"
Beckworth testified that it was sent to Thompsen's parole officer, Roy Shamblin. The
letter stated: "Please be advised that this office will not seek prosecution on [William
Thompsen] for the offense of Unlawful Possession of Firearm by Felon. If anything
further is needed please contact this office." 

 Defense counsel testified that the State provided him with the letter from
Beckworth at the end of the guilt phase of the trial, after Thompsen had already testified. 
Beckworth explained that he first became aware that defense counsel did not have
possession of that particular letter "on the morning before final arguments." He
discovered that the letter had inadvertently been placed in Adams' file and gave it to
defense counsel before closing arguments. On March 25, 2004, after Appellant's trial,
Beckworth also discovered that the letter from Thompson to Beckworth had inadvertently
been placed in Adams' file and immediately faxed it to defense counsel. 

 Beckworth testified that the State did not make any deal with Thompsen regarding
his charge for unlawful possession of a firearm by a felon. Forrest Phifer, Thompsen's
attorney, also testified that he was present at the meeting with Hatch and Beckworth and
that no deals were made in exchange for Thompsen's testimony. Phifer explained that
Thompsen had not been indicted for the charge, and it was Phifer's standard practice to
file a motion for an examining trial in cases without indictments. Both Phifer and
Beckworth testified that cases in Cherokee County are routinely dismissed at the
magistrate level when a defense attorney files a motion for an examining trial. Beckworth
testified that he did not prosecute Thompsen on the charge, not because of any deal for
his testimony, but because the case was "just not prosecutable," explaining as follows:

 With reference to Mr. Thom[p]sen's case the offense report indicated that
he was riding a four wheeler on a location and law enforcement found him
in possession of a firearm, that he was - - indicated to them that he was
going to do some target practicing in a field or in the woods somewhere.


 My experience in over 20 years of felony prosecution the citizens of
Cherokee County and East Texas generally are not real fond of weapons
offenses, very difficult to get a jury in a felon in possession with a firearm. 
And in situations where someone is hunting the weapon is in their home or
something like this where it's target practicing and there is no other crimes
involved or activities indicating a danger situation it is very difficult to get a
conviction and most of those cases are not prosecuted and are declined on
the basis of insufficient evidence.


 In this particular case, parole was notified that we were not going to
prosecute, some of that took place through Mr. Hatch, and unknown to me
until a point shortly before trial at which time the Defense was made aware
of it, I believe Mr. Hatch did ask Mr. Shamblin [for] leniency for
[Thompsen] and I believe that was developed by the defense during the
trial.

 

 The record reflects that the defense was able to argue at trial that Thompsen
received a benefit in exchange for his testimony. When cross-examined at trial by
defense counsel, Thompsen admitted that the State never showed up for the examining
trial and that Hatch made a phone call to his parole officer on his behalf. Defense counsel
also made the following statements in this regard during his closing argument:

 Mr. Beckworth wants to talk about Mr. Thompsen. Mr. Thompsen got a
benefit. Randy Hatch called his parole officer and asked for leniency. Mr.
Thompsen got another benefit. When his examining trial came up the State
didn't even show up so all charges against him were dismissed.


 Appellant has failed to show that the letters pertaining to Thompsen were
"material" as required by Brady. Thompsen, his attorney, and the prosecutor all denied
that there was a deal in exchange for his testimony. Thompsen, however, acknowledged
at trial that the State asked his parole officer for leniency and ultimately failed to
prosecute him for the unlawful possession of a firearm by a felon charge. Even if the
evidence were material, the jury was aware of the same matters referenced in the letters
and was able to take this into consideration in their deliberations at trial. Thus there was
no reasonable probability that the outcome of the trial would have been different if
defense counsel had known about the letters earlier. Bagley, 473 U.S. at 682. 

 Nickie Dement testified at the hearing on the motion for new trial that she was not 
writing a book about the incident and that she had never indicated to anyone that she
planned to write a book. She testified that she contacted the Montel Williams Show via
telephone "a week or so after trial had begun" and that she appeared on the show "[a]
week or two after the trial." Defense counsel testified that he did not know about
Dement's appearance on the show "until after the close of the testimony" in Appellant's
trial. Beckworth testified as follows:

 I had no knowledge either at the time of trial or since then concerning
Nickie Dement writing any kind of book concerning this experience.


 The only information I had concerning an appearance on the Montel
Williams' Show occurred I think the Friday evening after the first week of
trial and Ms. Dement's father contacted me indicating that she might appear
on the Montel Williams' Show and what he told me was that it was
concerning something about the job's [sic] people get and how they were
after they are a victim of crime and how that alleviates it.


 During the time that the Jury was out on punishment I believe I spoke
further with the Ansley family and discovered that the Montel Williams'
Show may be more detailed about it, but that it was not going to take place
until a week or two later.


 I did express concern about it but my concern was related to jury selection
in the Adams case.


 Appellant has not shown that Dement's planned appearance on the Montel
Williams Show was "material" evidence. He states in his brief that he could have used
this evidence to argue "that she was, perhaps, embellishing her testimony so as to make a
greater impact, or notoriety, concerning her upcoming television appearance." Appellant,
however, has failed to show that Dement actually embellished her testimony in any way. 
Further, although Dement initiated contact with the television show staff, she testified
that they already "knew the story" without her telling them about it. There is no
reasonable probability that the outcome would have been different if the State had
informed defense counsel during trial about Dement's planned television show
appearance. Point of error eight is overruled. 

 We affirm the judgment of the trial court.

 Meyers, J.


Delivered: January 31, 2007

Do Not Publish 
1. Unless otherwise indicated, all references to Articles refer to the Texas Code of
Criminal Procedure.