

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NOS. PD-0851-14 & PD-0852-14

### REGINALD NIXON, Appellant

### v.

### THE STATE OF TEXAS

## ON APPELLANT'S PETITIONS FOR DISCRETIONARY REVIEW
## FROM THE SEVENTH COURT OF APPEALS
## TARRANT COUNTY

KEASLER, J., delivered the opinion of the Court, in which MEYERS, JOHNSON, HERVEY, RICHARDSON, and NEWELL, JJ., joined. ALCALA, J., filed a dissenting opinion. YEARY, J., filed a dissenting opinion, in which KELLER, P.J., joined.

## O P I N I O N

At Reginald Nixon's trial, the jury returned punishment verdicts of seven years' and nine years' confinement for two charged offenses to run consecutively. The judge instructed the jury that, by law, the sentences would be served concurrently. After additional deliberations, the jury returned verdicts of sixteen years' confinement for each charge. According to statute, however, the judge was required to accept the original verdicts and

reform them in accordance with the law. We therefore must reverse the court of appeals' judgments and reform the trial court's judgments to reflect the original verdicts to be served concurrently.

## I. Background

Nixon was charged in separate indictments with the offenses of burglary of a habitation and evading arrest or detention with a vehicle. The indictments were consolidated and tried before a jury. Nixon pleaded guilty to both indictments and pleaded true to each indictment's enhancement provisions. At the conclusion of evidence, the judge instructed the jury to find Nixon guilty of the alleged offenses and find the enhancement provisions true. The jury was further instructed to assess punishment in each cause and was given the applicable range of punishment for each offense.

During its initial deliberations the jury sent a note to the judge that asked, "Do the sentences run concurrently or sequential[ly]? I.e.: is the minimum 5 or 7? Clarification: 2 terms and 2 possible fines?" The judge responded only that the jury was to continue deliberating. The jury returned verdicts of seven years and no fine for the burglary charge and nine years and no fine for the evading arrest or detention charge. However, on each verdict form there was an asterisk next to the term of years imposed that referred to a handwritten notation at the bottom of the verdict. Each notation stated, "To be served consecutively with [the other charge] not concurrently."

The judge read the verdicts aloud, but upon noticing the handwritten note, the judge

called the parties to the bench. The judge recessed the jury and asked both sides their positions on the verdicts. The State argued that the verdicts should not be received because the verdicts were premised on the sentences running consecutively and the law did not permit the jury to make such a decision. Nixon, however, urged the judge to accept the verdicts but strike the handwritten portion or grant a mistral. Nixon contended that the note was merely advisory and that the judge need not follow it. The judge overruled Nixon's objections and denied his motion for mistrial. The judge did not receive the verdicts, but instead issued an additional instruction and sent the jurors to deliberate further. The jury was instructed as follows:

> You are further instructed that the Court cannot accept and receive your verdicts as stated. You are instructed that the sentences in both causes must be served concurrently by operation of law. You are instructed to read and consider this additional instruction with the remainder of the Court's charge and consider the charge as a whole. Please continue your deliberations.

Soon thereafter, the jury returned verdicts assessing punishment at sixteen years' confinement and no fine for both offenses. Nixon was sentenced accordingly.

Nixon contested his sentences on appeal and reasserted his objections at trial.[1] He argued that the judge erred in failing to accept and reform the jury's original verdicts. Nixon did not challenge the propriety of the judge's additional jury instruction. The court of appeals held that Texas Code of Criminal Procedure Article 37.10(b) did not require the

---

[1] *Nixon v. State*, Nos. 07-13-00389-CR & 07-13-00390-CR, 2014 WL 2553372, at *1 (Tex. App.—Amarillo Jun. 4, 2014) (mem. op., not designated for publication).

judge to accept and reform the original verdicts and affirmed the trial court's judgments.[2] The court reasoned that while the judge may have had the authority to reform the verdict under Article 37.10, he also had the authority to refuse the verdict and return the jury to their deliberations pursuant to this Court's opinion in *Muniz v. State*.[3]

We granted Nixon's petition for discretionary review to review the court of appeals' application of Article 37.10 and to resolve incongruities, if any, between Article 37.10(b) and *Muniz*.

## II. Analysis

### A. Article 37.10

Before Article 37.10(b)'s enactment, a jury verdict containing an unauthorized punishment rendered the entire verdict void.[4] For instance, the court of appeals in *Bogany v. State* attempted to reform the jury's punishment verdict by omitting the fine it included because the Penal Code did not allow a fine for the particular offense.[5] This Court noted that the controlling law at the time did not authorize an appellate court to reform an unauthorized verdict.[6] And because the court of appeals was without authority to reform the unauthorized

---

[2] *Id.*

[3] *Id.* at *2 (relying on *Muniz v. State*, 573 S.W.2d 792 (Tex. Crim. App. 1978)).

[4] *Bogany v. State*, 661 S.W.2d 957, 959 (Tex. Crim. App. 1983).

[5] *Id.* at 958.

[6] *Id.* at 959.

verdict, the verdict was "void at its inception" and must be set aside.[7]  Therefore, reversing

the trial court's judgments and remanding the cause was necessary.[8]

Before 1985, the first paragraph of Texas Code of Criminal Procedure Article 37.10,

now Article 37.10(a), stated:

Art. 37.10. Informal verdict

If the verdict of the jury is informal, its attention shall be called to it, and with
its consent the verdict may, under the direction of the court, be reduced to the
proper form.  If the jury refuses to have the verdict altered, it shall again retire
to its room to deliberate, unless it manifestly appear that the verdict is intended
as an acquittal; in that case, the judgment shall be rendered accordingly,
discharging the defendant.[9]

But in 1985, the statute was amended to include Article 37.10(b):

If the jury assesses punishment in a case and in the verdict assesses both
punishment that is authorized by law for the offense and punishment that is not
authorized by law for the offense, the court shall reform the verdict to show
the punishment authorized by law and to omit the punishment not authorized
by law.[10]

Article 37.10(b)'s inclusion seemingly responded to the predicament the *Bogany* Court

encountered.  It gave the trial and appellate courts the authority to reform a verdict containing

---

[7]  *Id.*

[8]  *Id.*

[9]  TEX. CODE. CRIM. PROC. art. 37.10(a) (Vernon 1979 & West 2006).

[10]  Acts 1985, 69th Leg., ch. 442, § 1 (effective June 11, 1985); TEX. CODE CRIM. PROC. art. 37.10(b) (West 2006).

an unauthorized punishment, an infirmity that previously rendered the verdict void.[11]

Article 37.10(b)'s enactment created a legislative mandate to trial and appellate courts in addressing partially unauthorized verdicts. Article 37.10(b)'s language indicates that the Legislature intended courts to treat partially unauthorized verdicts differently from informal verdicts. Section (a) grants a trial judge the discretion to accept an informal verdict and, with the jury's consent, put it into proper form. Only if the jury refuses the alteration must a trial judge retire the jury for further deliberations. Section (b), however, speaks only to jury punishment verdicts containing an unauthorized punishment provision. And in the event of a partially authorized verdict, a trial judge has no choice but to reform the verdict to show the punishment authorized by law and to omit the punishment not authorized by law. By enacting Article 37.10(b), the Legislature intended a significant distinction between informal and partially unauthorized verdicts. To conclude otherwise would run counter to the established statutory-construction presumption that the Legislature intends that the entire statute be effective and does not intend a useless action.[12]

## B. Informal or Unauthorized?

This matter's resolution turns on whether the jury's verdict was informal or was at once both authorized and unauthorized. If the jury's verdict was informal, section (a) applies; if partially unauthorized, section (b) controls. Nixon takes the view that, unlike the

---

[11] *Ex parte Youngblood*, 698 S.W.2d 671, 672 (Tex. Crim. App. 1985); *Ex parte Johnson*, 697 S.W.2d 605, 607 (Tex. Crim. App. 1985).

[12] *Garza v. State*, 213 S.W.3d 338, 349 (Tex. Crim. App. 2007).

terms of confinement, the jury's verdict notation that the sentences were to run consecutively is unauthorized, and section (b) required the judge to accept the original verdicts and to omit the cumulation language.

The State, on the other hand, maintains that the jury's verdict did not contain unauthorized "punishment" because cumulation is not considered punishment. Unauthorized punishment, the State argues, is punishment that falls outside the applicable range of punishment defined by Penal Code §§ 12.21 through 12.35. Because cumulative sentencing is permitted under Penal Code § 3.03, not by the statutes defining ranges of punishment, the State maintains that cumulating sentences should not be considered punishment. Therefore, the State asserts, the judge had the discretion to either accept and reform the verdict or reject the verdict and send the jury back for further deliberation.

We are unpersuaded by the State's argument that cumulation is not true "punishment" because it does not appear in the Penal Code's section defining punishment. If we were to accept the logic of this argument, any addition made by a jury on a punishment verdict form—whether purporting to cumulate terms of confinement, impose specific community supervision conditions, dictate a condition of incarceration, or something equally distant from the jury's province—would necessarily render the verdict "informal." But this result does not correspond with the term's common usage or how we have defined the term "informal" in the past.

Black's Law Dictionary defines "informal" as "not done or performed in accordance

with normal forms or procedures."[13]  This is a fair definition of the word and one readily understood by any reader of Article 37.10(a).  It further accords with this Court's reading of the term.  In *Jennings v. State*, we were asked whether a verdict form was considered a part of the jury instructions.[14]  Although *Jennings* did not attempt to answer the question we do today, our opinion provides insight into the term "informal verdict."  In the absence of a statutory requirement for including a jury-verdict form as a part of the court's charge, this Court historically was ambivalent over their use.[15]  Acknowledging Article 37.10(a) as a vestige of a time when verdict forms were not used with regularity, we noted, "In fact, Article 37.10 expressly acknowledges the possibility of an 'informal verdict'—one that does not meet the legal requirements of being written or answered as authorized—and sets out the method to repair its 'informality.'"[16]  This is consistent with the historical understanding of the statute's language, which remains nearly verbatim dating back to the Old Code.[17]

*Reese v. State* provides a more recent example of Article 37.10(a)'s interpretation.[18]

---

[13]  BLACK'S LAW DICTIONARY 898 (10th ed. 2014).

[14]  302 S.W.3d 306, 307 (Tex. Crim. App. 2010).

[15]  *Id*. at 309 & n.13.

[16]  *Id*. at 309.

[17]  *See, e.g.*, *Murphree v. State*, 115 S.W. 1189, 1190 (Tex. Crim. App. 1908); *Slaughter v. State*, 24 Tex. 410, 412–13 (1859).

[18]  *Reese v. State*, 773 S.W.2d 314 (Tex. Crim. App. 1989)

There, the jury left the verdict form blank for one of the charged offenses.[19] The judge informed the jury of the omission and instructed it to continue deliberating.[20] After the jury returned a second time, the jury's verdict found Reese guilty of the previously omitted verdict, but also found him not guilty of a lesser-included offense. Once more, the judge instructed the jury to reconsider the lesser-included offense. Finally, the jury returned guilty verdicts on all submitted offenses and their lesser-included offenses.[21] We held that the judge should not receive an incomplete or unresponsive verdict.[22] We further noted that, "It is not only within the power, but it is the duty of the trial judge, to reject an informal or insufficient verdict, call to the attention of the jury the informality or insufficiency, and have the same corrected with their consent, or send them out again to consider their verdict."[23] The *Reese* Court held that the judge properly directed the jury to continue to deliberate because (1) the first time the jury returned from deliberations it returned no verdict at all on one of the charged offenses, and (2) the judge found the jury's verdicts to be in conflict and insufficient when it returned the second time.[24]

---

[19] *Id*. at 316.

[20] *Id*.

[21] *Id*.

[22] *Id*. at 317.

[23] *Id*.

[24] *Id*. at 318.

Like in *Reese*, omissions rendered the jury's punishment verdict informal in *Muniz v. State*.[25] Despite announcing that it had reached a verdict, the jury in *Muniz* left the statutorily required future-dangerousness question unanswered.[26] The judge sent the jury back for further deliberations with the instruction to "continue your deliberations in this case, to see if you can arrive at an answer to Special Issue Number II."[27] We rejected Muniz's argument that the verdict was an informal acquittal under then Article 37.10, now Article 37.10(a).[28] We held that this provision permits a judge "to put a verdict in the proper form when the jury fails to do so."[29] There, we held that the jury's verdict was "merely incomplete." We further held that, "The court can instruct a jury to retire to reconsider the verdict if it does not comply with the charge, the indictment, or the punishment allowed by the applicable statute."[30] As instructive as *Muniz* is, it has caused some confusion, especially in light of Article 37.10(b)'s enactment.

It is *Muniz*'s last phrase—"the punishment allowed by the applicable statute"—that,

---

[25] *Muniz*, 573 S.W.2d at 792.

[26] *Id.* at 793.

[27] *Id.*

[28] TEX. CODE CRIM. PROC. art. 37.10(a) ("If the jury refuses to have the verdict altered, it shall again retire to its room to deliberate, unless it manifestly appear that the verdict is intended as an acquittal . . . .") (West 2006).

[29] *Muniz*, 573 S.W.2d at 794.

[30] *Id.*

in the court of appeals' opinion, prevented it from finding fault in the trial judge's failure to accept the original verdicts and reform them.[31] However, we find *Muniz* inapplicable to this case for the following reasons. First, Article 37.10(b) did not exist when *Muniz* was decided. So when *Muniz* included the phrase "punishment allowed by the applicable statute," the Court was not contemplating a distinction between sections (a) and (b).[32] Second, the verdict in *Muniz* was incomplete; the jury failed to answer a question put to it. As such, the verdict initially returned was an informal one even in light of yet-to-be-enacted Article 37.10(b).[33]

*Muniz* presented both distinguishable facts and controlling law; it does not conflict with Article 37.10(b), and its holding applies only to informal verdicts. Article 37.10(b)'s enactment created new mandatory procedures in dealing with an unauthorized verdict. Unlike *Muniz*, the verdicts here were complete and decided the two discrete punishment questions in each case: the terms of confinement and whether a fine should be assessed. Furthermore, the original verdicts were neither ambiguous nor conditional in that the trial judge could not discern the jury's true intent. Rather, the jury's verdicts were quite definitive in both assessing no fines and terms of confinement. There was nothing in the jury's punishment verdict that could be considered conditional; there are no "if, then" propositions or dependent clauses in its verdict. It is also readily apparent that the jury intended to control

---

[31] *Nixon*, 2014 WL 2553372, at *1–2.

[32] *Id.*

[33] *See Muniz*, 573 S.W.2d at 794.

how the assessed terms of confinement were to be served. However, the jury was powerless to do so.[34]

The verdicts Nixon's jury returned contain both authorized and unauthorized punishment. In *Ex parte Johnson*, this Court addressed a jury verdict that assessed punishment at fifty years' confinement and a $10,000 fine that exceeded the monetary amount permitted under the applicable law.[35] We held that the imposition of a $10,000 fine for aggravated robbery exceeded the $5,000 maximum fine under the applicable range of punishment.[36] After holding that the fifty-year term of confinement was authorized, but the $10,000 fine was not, we applied newly enacted Article 37.10(b), and reformed the verdict by deleting the $10,000 fine.[37]

The San Antonio Court of Appeals' opinion in *Woodard v. State*[38] is persuasive because it presented a factually similar punishment verdict to those initially returned by Nixon's jury. The court was confronted with an unauthorized verdict when the jury's verdict assessed punishment of fifteen years incarceration, but also included a written stipulation that

---

[34] *See Beedy v. State*, 250 S.W.3d 107, 110 (Tex. Crim. App. 2008) (explaining trial judges' discretionary power to cumulate punishments). *See also* TEX. PENAL CODE § 3.03(a) (West 2006).

[35] *Ex parte Johnson*, 697 S.W.2d at 607–08.

[36] *Id.* at 606.

[37] *Id.* at 607–08.

[38] *Woodard v. State*, 898 S.W.2d 4 (Tex. App.—San Antonio 1995, pet. ref'd).

Woodard enter drug rehabilitation as part of his sentence.[39] Concluding that the jury verdict contained some punishment within the law and some without, the court held that Article 37.10(b) required the judge to reform the verdict and omit the punishment not authorized by law.[40] The court held that the trial judge correctly omitted the drug-rehabilitation stipulation because it was clearly unauthorized.[41]

In this case, the jury's original punishment verdicts were also neither contradictory nor incomplete. The jurors answered all the questions asked of them. The jury's imposition of seven years and no fine for the burglary charge and nine years and no fine for the evading arrest or detention charge was authorized because these terms were within the applicable punishment range for both offenses.[42] However, the jury's attempt to stack the terms was unauthorized because "the Legislature has assigned the task of cumulating sentences exclusively to the trial judge."[43] In fact, the judge also could not order the two terms of confinement to run consecutively. Although the dissent suggests cumulation is "in the nature of an unavoidable administrative determination,"[44] this case presented no opportunity to

---

[39] *Id.* at 5.

[40] *Id.* at 6.

[41] *Id.*

[42] *See* TEX. PENAL CODE §§ 3.03(a), 12.42(a–b), 38.04(b)(2)(A), 30.02(c)(2) (West 2006).

[43] *Beedy*, 250 S.W.3d at 110. *See* TEX. PENAL CODE § 3.03(a).

[44] *Post*, at 3 (Yeary, J., dissenting).

determine how the terms would run because Penal Code § 3.03(a) required concurrent sentencing.

Because the jury's handwritten additions to the verdict form were clearly intended to control how the nine- and seven-year terms of confinement were to be served—in essence, ensuring Nixon would be incarcerated for sixteen years—the jury intended that the cumulation serve a punitive purpose, and those additions should be considered punishment for purposes of this statute. After all, the unauthorized features of the jury's verdicts are found in its punishment verdicts—the result of the jury's "normative, discretionary function" in assessing how Nixon should be punished.[45] Although the terms of confinement were authorized punishments, the attempted cumulation was punishment unauthorized by law. Article 37.10(b)'s plain language is clear that, when the jury assesses punishment and returns a verdict assessing punishment that is both authorized and unauthorized by law, "the court shall reform the verdict to show the punishment authorized by law and to omit the punishment not authorized by law."[46] Accordingly, we hold that the judge erred in failing to accept the initial punishment verdicts and omit the jury's unauthorized attempt to stack the terms of confinement.

---

[45] *See Barrow v. State*, 207 S.W.3d 377, 379–80 (Tex. Crim. App. 2006) (holding that judge-imposed cumulation does not offend the Sixth Amendment, and further noting that where within the statutory range punishment should be assessed and whether to cumulate the sentences imposed is a "normative, discretionary function that does not turn on discrete findings of fact.")

[46] TEX. CODE CRIM. PROC. art. 37.10(b).

### III. Conclusion

We note the varying courts of appeals' positions in determining what portion of a punishment verdict is unauthorized and how to remedy it by omission.[47] Unlike most of those cases, the verdicts here do not present those that, if entered and incorporated into judgments, would result in illegal sentences. We reserve that discussion for the proper case. We further note that the jury's original verdicts demonstrate their intent to require Nixon to serve a total of sixteen years' confinement on both charges. However, Article 37.10(b)'s plain language compels us to conclude that the court of appeals erred in affirming the trial court's judgments because it explicitly requires the original verdicts' acceptance and reformation. We must do so no matter how desirable the results of a contrary interpretation may be.[48] Because the judge was required to reform the verdict under Article 37.10(b) but failed to do so, it now becomes our duty to reform it.[49]

Accordingly, we reverse the court of appeals' judgment and reform the trial court's

---

[47] *Compare Russell v. State*, 727 S.W.2d 92 (Tex. App.—Dallas 1987, pet. ref'd) (omitting the entire fine when the jury also assessed non-probated confinement term), *and Bennett v. State*, 723 S.W.2d 359 (Tex. App.—Fort Worth 1987, no pet.) (same), *with Vance v. State*, 970 S.W.2d 130 (Tex. App.—Dallas 1998, no pet.) (reducing jail time to statutory maximum), *and Howard v. State*, 766 S.W.2d 907 (Tex. App.—Fort Worth 1989, no pet.) (reducing fine to statutory maximum).

[48] *Contra post*, at 2 (Yeary, J., dissenting) (suggesting a different interpretation to give trial courts greater flexibility in handling verdict "anomalies").

[49] TEX. CODE CRIM. PROC. art. 37.10(b) ("If the trial court is required to reform a verdict under this subsection and fails to do so, the appellate court shall reform the verdict as provided by this subsection.").

judgments to reflect the original punishment verdicts of seven years' confinement and no fine for the burglary offense and nine years' confinement and no fine for the evading arrest or detention offense.[50] These sentences shall be served concurrently.[51]

DELIVERED: February 24, 2016

PUBLISH

---

[50] *See* TEX. R. APP. P. 78.1(b).

[51] *See* TEX. PENAL CODE § 3.03(a).