

# NUMBERS 13-24-00345-CR, 13-24-00346-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RENE MEJIA,                                                       Appellant,

v.

THE STATE OF TEXAS,                                              Appellee.

## ON APPEAL FROM THE 36TH DISTRICT COURT
## OF ARANSAS COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Fonseca**
**Memorandum Opinion by Justice West**

Appellant Rene Mejia was indicted on August 25, 2022, in appellate cause number 13-24-00345-CR for possession with intent to deliver a controlled substance in an amount greater than four grams but less than 200 grams, a first-degree felony, and theft of copper, a state jail felony. *See* Tex. Health & Safety Code Ann. § 481.112(d); Tex. Penal Code Ann. § 31.03(e)(4)(F)(iii). In accordance with the State's plea agreement, Mejia pleaded

guilty to the reduced offense of possession of a controlled substance in an amount of four grams or more but less than 200 grams, a second-degree felony, and the State dismissed the theft of copper charge. *See* TEX. HEALTH & SAFETY CODE ANN § 481.115(d). Mejia was indicted on January 18, 2023, in appellate cause number 13-24-00346-CR for possession of a controlled substance in an amount of one gram or more but less than four grams, a third-degree felony, and Mejia pleaded guilty to the offense. *See id.* § 481.115(c). Also in accordance with the plea agreement, Mejia pleaded true to two enhancement paragraphs, and his sentences were enhanced to habitual felony offender status. *See* TEX. PENAL CODE ANN. § 12.42(d). The trial court sentenced Mejia as recommended by the State to twenty-five years' incarceration as to each count, to run concurrently.

Mejia argues by two issues that (1) the trial court improperly denied his motion to quash the indictments, and (2) he received ineffective assistance of counsel. We affirm.

## I.     BACKGROUND

On June 26, 2024, the trial court called the case for trial. Mejia addressed the court and apologized to the prosecutor, explaining that there had "been a whole misunderstanding from the get go" and that he viewed video evidence "under the assumption that it was a whole different indictment number." He stated:

> [I]'ve been shown nothing but video of the whole different indictment number until Monday whenever we came to an agreement on something I seen the report of the officer, but we were doing grand jury selection so I viewed it and, of course, I'm guilty of it.

2

> I should have took [the State's] plea bargain a long time ago under that indictment number, but I didn't see no video of that right there nor was I aware of what was being shown to me.
>
> I was under the assumption and shown videos of a whole different indictment number of which I knew I had standing for which was the plea bargain she was giving me.
>
> Like [I] stated, your Honor, forget all this. I don't even want to argue with the other lawyers, you know what I mean? We were all just under a misunderstanding and it was my fault for being so—I'm under medication, your Honor

Mejia explained that he was suffering from "PTSD, MSD, and manic depression," and it "hurt [him] to be enhanced on an 18[-]year charge when . . . [he] was doing good." Mejia also indicated that if the State offered him "that plea bargain again, that seven, [he] will gladly sign right now." The prosecutor responded and clarified to the trial court that "[t]here was a seven year offer that was open since January 23rd of 2023" which had expired, and the State was ready to proceed to trial. The prosecutor noted that "the only offer" the State "was willing to make at this time given the circumstances" and "the time and the effort the State put in preparation for this trial" was for an enhanced sentence of twenty-five years and recommendation that "the charges will run concurrent."

Mejia then contended that defense counsel never showed him a video, and "[c]ounsel's representation fell below the objective standard of reasonableness." Defense counsel responded:

> I have had the video in my possession. I talked to him about what's on the video. We discussed it yesterday before we picked the jury. We watched it yesterday after we picked the jury. I went to the jail, we went through it. We spent two hours in the jail. We watched the video. I forced him to watch the

3

video because he wanted to talk about other things. So the issue that I have with Mr. Mejia, your Honor, is that he doesn't listen. And it makes it very difficult to help him and to assist him if he doesn't listen.

The last time I went to visit him at the jail I was there for over two hours. We did watch some videos, but we didn't get through all of them because he continued to talk about things that are irrelevant. So it is very difficult to be as effective as I can be when he doesn't listen.

Mejia responded and alleged that, although defense counsel had five months from the date she was appointed to his case to inform him of the video, counsel only showed it to him two days before trial. Mejia contended that his three previous court-appointed attorneys never showed him the video, and had he seen it, he would have accepted the seven-year plea deal. It is not clear which offense the video pertained to, but Mejia implied that the video depicts him committing one of the offenses at issue. Mejia also generally complained that "[he] wasn't granted the opportunity to challenge the [grand jury] array."

A conversation off the record ensued. Upon return, the parties announced that they had entered into a plea agreement. Mejia pleaded guilty to the aforementioned offenses and was sentenced as outlined above. This appeal followed.

## II.     GRAND JURY ARRAY

By his first issue, Mejia argues that his convictions should be overturned because the trial court improperly denied his motions to quash the indictments. Specifically, he argues that "the grand jury proceedings were unfair and [racially] biased" because he did not have the opportunity to challenge the grand jury array. The State did not file a brief in this appeal.

4

"Before the grand jury is impaneled, any person may challenge the array of grand jurors or any person presented as a grand juror." TEX. CODE CRIM. PROC. ANN. art. 19A.151(a). "The court may not hear objections to the qualifications and legality of the grand jury in any other way." *Id.* "A person confined in jail in the county shall, on the person's request, be brought into court to make a challenge described by Subsection (a)." *Id.* art. 19A.151(b). "A grand juror is considered to be impaneled after the grand juror's qualifications have been tested and the grand juror has been sworn." *Id.* art. 19A.201(c).

The Texas Court of Criminal Appeals has interpreted this statute to mean that any challenge to the grand jury must be made at the earliest opportunity, which normally means when it is impaneled. *Muniz v. State*, 573 S.W.2d 792, 796 (Tex. Crim. App. 1978). "If the defendant has an opportunity to challenge the array when it is impaneled and does not do so, he may not challenge it at a later date." *Id.*; *see also* TEX. R. APP. P. 33.1(a)(1) (requiring "a timely request, objection, or motion" to preserve an issue for appeal); *Tucker v. State*, No. 04-19-00201-CR, 2020 WL 3259873, at *3 (Tex. App.—San Antonio June 17, 2020, pet. ref'd) (mem. op., not designated for publication).

Mejia was represented by counsel throughout litigation but filed numerous pro se motions to dismiss or quash the indictment.[1] A defendant has no right to "hybrid representation," and a trial court is generally free to disregard any pro se motions

---

[1] Specifically, he filed in both cases a pro se motion to set aside the indictment on June 7, 2023; a pro se motion to dismiss the charging instruments on June 29, 2023; a pro se motion to "Discharge for Delay" on September 7, 2023; a pro se motion to dismiss for "Plain Errors" on January 10, 2024; and a pro se motion to quash the indictments on March 5, 2024.

presented by a defendant who is represented by counsel. *See Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007). However, even if we assume that Mejia's motions were proper, Mejia has waived this complaint on appeal. *See Muniz*, 573 S.W.2d at 796; *see also Tucker*, 2020 WL 3259873, at *4. Mejia filed his first motion to quash on June 7, 2023,[2] which was almost a year after he was indicted in cause number 13-24-00345-CR and about five months after he was indicted in 13-24-00346-CR, and he concedes that he was indicted after the grand jury was impaneled in both causes. Because Mejia's motion to quash the indictments and his subsequent motions to quash were filed after the grand jury was impaneled, Mejia has waived this issue on appeal. *See Muniz*, 573 S.W.2d at 796; *see also* TEX. R. APP. P. 33.1(a)(1); *Tucker*, 2020 WL 3259873, at *4 (holding that appellant waived his challenge to the grand jury array because he did not file his complaint before the grand jury had been impaneled); *Weeks v. State*, No. 11-11-00324-CR, 2013 WL 6178580, at *3 (Tex. App.—Eastland Nov. 21, 2013, pet. ref'd) (mem. op., not designated for publication) (same); *Crenshaw v. State*, No. 13-00-692-CR, 2002 WL 34249771, at *6 (Tex. App.—Corpus Christi–Edinburg May 23, 2002, pet. ref'd) (mem. op., not designated for publication) (same).

Mejia also argues by his first issue that the grand jury proceedings were racially biased because "he was not invited to testify before the grand jury." However, it is well established that "[a] criminal defendant or other person being investigated by the grand

---

[2] The record indicates that the motion was erroneously time stamped June 7, 2022, but it was filed on June 7, 2023.

jury does not have the right to appear in person or by counsel before the grand jury." *McConnell v. State*, 34 S.W.3d 27, 31 (Tex. App.—Tyler 2000, no pet.) (citing *Rogers v. State*, 774 S.W.2d 247, 262 (Tex. Crim. App. 1989); *Morin v. State*, 682 S.W.2d 265, 267 (Tex. Crim. App. 1983); *Moczygemba v. State*, 532 S.W.2d 636 (Tex. Crim. App. 1976)); *see also Schmude v. State*, No. 13-12-00320-CR, 2014 WL 3926749, at *7 (Tex. App.—Corpus Christi–Edinburg May 29, 2014, pet. ref'd) (mem. op., not designated for publication) (rejecting appellant's argument that he had a right to testify before the grand jury). He nevertheless argues, without citing to legal authority, that "he was not able to see the array in order to put forth such a challenge and because he was indicted for theft of copper, of which he was innocent, this demonstrated disparate treatment." *See* TEX. R. APP. P. 38.1(i). As Mejia acknowledges in his brief, he has not put forth any particularized evidence to put forth his position of racial disparity. *See id.*; *Muniz v. State*, 672 S.W.2d 804, 808 (Tex. Crim. App. 1984) (analyzing whether appellant "established a prima facie case of discrimination in the grand jury selection process" by reviewing the testimony and composition of the grand jury).

Finding no merit in the foregoing arguments, we conclude that the trial court did not err in denying Mejia's motions to quash or dismiss the indictments. We overrule this first issue.

### III.   INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Mejia argues that his trial counsel rendered ineffective assistance.

7

**A.      Standard of Review & Applicable Law**

The United States and Texas Constitutions guarantee a criminal defendant the right to reasonably effective assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To obtain a reversal of a conviction on grounds of ineffective assistance of counsel, an appellant must show: "(1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome of the proceeding." *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009) (citing *Strickland*, 466 U.S. at 687). We may address either prong first, and if an appellant fails to prove one prong of the test, we need not address the other. *Strickland*, 466 U.S. at 687.

When evaluating a claim of ineffective assistance, we look at the totality of the representation and the particular circumstances of the case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Our review is highly deferential to trial counsel, and we strongly presume that the assistance counsel provided was within the wide range of reasonable professional assistance. *Id.*; *Gonzalez v. State*, 510 S.W.3d 10, 30 (Tex. App.—Corpus Christi–Edinburg 2014, pet. ref'd). In the absence of evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation and will not conclude that the conduct was deficient unless the conduct was so outrageous that no competent attorney would have engaged in it. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). "Any allegation of ineffectiveness must be firmly

8

founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 813.[3]

## B. Analysis

Mejia had four different court-appointed attorneys throughout his case. He argues that his attorneys were ineffective because they did not show him the video discussed above until "right before trial." Mejia argues that had he seen the video, he would have accepted the State's seven-year plea bargain agreement. As previously mentioned, it is not clear which cause number the video is relevant to or what is shown in the video.

No videos are contained in the appellate record, and there are no remarks in the record from Mejia's first three attorneys about the video. Mejia's last attorney informed the trial court that it was difficult to get Mejia to watch any of the video evidence because "he doesn't listen." She stated that she had to "force[] him to watch the video," and she could not even get him to look "through all of [the videos] because he continued to talk about things that are irrelevant." In a pretrial hearing on June 24, 2024, defense counsel explained the same:

> I did come onto his case in February [of this year], Judge. It is a very straightforward case. We sat and I have visited [Mejia] in the jail for lengthy periods of time.

---

[3] For this reason, we note that "claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *see Thompson v. State*, 9 S.W.3d 808, 814–15 (Tex. Crim. App. 1999) (noting that a habeas application would "provide an opportunity to conduct a dedicated hearing to consider the facts, circumstances, and rationale behind counsel's actions at . . . trial").

Now is it true I haven't visited him this week [prior to trial]? That is true, Judge. It doesn't take much to get prepared for a possession of controlled substances case. We've been through the evidence, it's very straightforward.

The last time we were here [on April 29] we were ready to go, he was in good spirits, the panel got busted. I can't control the fact that the jury can't follow the law in regards to 25 to life.

So there wasn't much to prepare between the last time we were set and the fact we're here before the Court again. Nothing has changed.

There is also evidence that Mejia's previous attorneys recommended that he take the State's seven-year plea deal, and Mejia rejected those recommendations on at least two occasions. At a docket call on January 11, 2023, Mejia's first attorney told the trial court that "we got a plea offer that's very favorable." Mejia then told the court that he was making "[a] Motion for Ineffective Counsel," and generally complained that "[a]ll [counsel's] shown [him] is just nothing but plea bargains." At a hearing on February 7, 2024, Mejia's third attorney said that, after he recommended that Mejia take the State's plea offer, Mejia reported him to the Texas State Bar for "attempted coercion." Mejia affirmed that he had contacted the State Bar and filed a grievance regarding the attorney's representation of him, and the trial court granted the attorney's motion to withdraw.

Mejia faces the onerous burden of overcoming a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689–90. It appears from the record that Mejia refused to follow his attorneys' advice on multiple occasions. As Mejia's last attorney explained, it was extremely difficult to represent Mejia because he "doesn't listen," and he wanted to raise "irrelevant" issues.

10

Moreover, when Mejia apologized to the prosecutor above, he admitted that he was confused as to which evidence pertained to which indictment and that was at least in part "[his] fault." Because the record does not firmly establish deficient performance of Mejia's attorneys, we overrule Mejia's second issue.[4] *See Strickland*, 466 U.S. at 687; *Thompson*, 9 S.W.3d at 813.

## III. CONCLUSION

The trial court's judgment is affirmed.

JON WEST
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
7th day of August, 2025.

---

[4] By what we construe as a sub-issue to his second issue, Mejia argues that his trial attorneys were ineffective for failing to obtain an examining trial. *See* TEX. CODE CRIM. PROC. ANN. art 16.01. He contends that "if he had been given an examining trial, he would have been led to accept the seven years prison offer before it was rescinded by the State." However, Texas courts have consistently held that an indictment cannot be thrown out because an appellant was not afforded an examining trial. *See State ex rel. Holmes v. Salinas*, 784 S.W.2d 421, 427 (Tex. Crim. App. 1990) ("It has long been the law in this state . . . that the return of an indictment terminates any right to an examining trial."). He nevertheless "argues that because he asked for an examining trial before he was indicted, he should have been given one." Mejia provides no legal authority for this assertion. *See* TEX. R. APP. P. 38.1. We overrule this sub-issue.

11