# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00267-CR[1]

**Ernest Williams, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. D-1-DC-16-200226, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Ernest Williams was charged with assault family violence for allegedly strangling his then girlfriend Sharmaine Lee.[2] *See* Tex. Penal Code § 22.01(a), (b)(2)(B) (listing elements of offense of assault and elevating offense level to third-degree felony if relationship between victim and defendant is described by provisions of Family Code and if "the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck"). In addition, the indictment

---

[1] The notice of appeal for this case was originally filed in this Court in December 2016, and the case was transferred to the El Paso Court of Appeals later that same month in compliance with a docket-equalization order issued by the supreme court. *See* Tex. Gov't Code § 73.001 (authorizing transfer of cases). In April 2018, the supreme court issued another order transferring back to this Court this case and thirty eight other cases that had also been previously transferred to the El Paso Court and that had not yet reached a final disposition. *See* Misc. Docket No. 18-9054, Transfer of Cases from Courts of Appeals (Tex. Apr. 12, 2018).

[2] The indictment originally also alleged that Williams pushed, threw, grabbed, and pulled Lee, but the State later abandoned those allegations.

contained an enhancement paragraph alleging that Williams had previously been convicted of the felony offense of murder. *See id.* § 12.42 (a) (stating that permissible punishment range for third-degree felony is elevated to that of second-degree felony if defendant has been previously convicted of felony offense). At the end of the guilt-or-innocence phase, the jury found Williams guilty of the charged offense. At the start of the punishment phase, Williams elected to have the district court assess his punishment and entered a plea of true regarding the enhancement allegation. The district court sentenced Williams to ten years' imprisonment and rendered its judgment of conviction accordingly. *See id.* § 12.33 (setting out punishment range for second-degree felony). In six issues on appeal, Williams challenges the district court's judgment of conviction and asserts that there were various errors in the jury charge. We will modify the district court's judgment of conviction to correct a clerical error and affirm the judgment as modified.

## BACKGROUND

As set out above, Williams was charged with assault family violence for allegedly strangling Lee, and Williams asserts on appeal that there were various errors in the jury charge. After several witnesses testified during the trial, including Lee, the jury charge was given to the jury. The charge contains definitions for terms used in the charge, including the term "bodily injury," sets out the meaning for the various mental states for assault, and reads, in relevant part, as follows:

1.

Our statutes provide a person commits the offense of assault if he intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse.

2.

Our statutes further provide that it is a Felony Assault Family Violence if the actor commits an offense, as described in Paragraph 1, on a member of the defendant's family, household, or with whom the defendant has had a dating relationship; and, if the person intentionally, knowingly, or recklessly impedes the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth.

. . .

6.

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, ERNEST WILLIAMS, . . . did then and there intentionally or knowingly or recklessly cause bodily injury to Sharmaine Lee, a member of the said ERNEST WILLIAMS' family or household or with whom ERNEST WILLIAMS has had a dating relationship, by seizing Sharmaine Lee on or about the throat or neck with ERNEST WILLIAMS' hands, then you will find the defendant guilty of the offense of Assault with Bodily Injury and proceed to consider the next Paragraph 7.

But, if you do not so find, or you have a reasonable doubt thereof, you will proceed to consider Paragraph 8.

7.

If you further find beyond a reasonable doubt that the defendant, ERNEST WILLIAMS, . . . did intentionally or knowingly or recklessly impede the normal breathing or circulation of the blood of Sharmaine Lee, by applying pressure to Sharmaine Lee's throat or neck with ERNEST WILLIAMS' hands, then you will find the defendant guilty of the offense of Felony Assault Family Violence by Impeding Normal Breathing and so say by your verdict, and proceed to consider Paragraph 8.

But, if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant and so say by your verdict not guilty.

. . .

11.

The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt,

3

and if it fails to do so, you must acquit the defendant. It is not required that the prosecution prove guilt beyond all possible doubt; however, it is required that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt. In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you and these instructions, you will acquit the defendant and say by your verdict not guilty.

. . .

### VERDICT OF THE JURY

We, the Jury, find the Defendant, ERNEST WILLIAMS, (guilty or not guilty) of the offense of Assault with Bodily Injury, as alleged in the indictment.

**IF GUILTY, PROCEED TO CONSIDER THIS PARAGRAPH:**

And, we also find that the defendant committed the offense of Felony Assault Family Violence by Impeding Normal Breathing, as alleged in the indictment.

____Yes  ____No


### STANDARD OF REVIEW AND GOVERNING LAW

As set out previously, most of Williams's claims assert some type of jury-charge error. Appellate courts review claims regarding alleged jury-charge errors under a two-pronged test, *see Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd), with the first prong being a determination regarding "whether error exists" and with the second prong requiring courts to evaluate the harm caused by the error, *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). The amount of harm needed for a reversal depends on whether a complaint regarding "that error was preserved in the trial court." *Swearingen*, 270 S.W.3d at 808. If the defendant made a timely objection, reversal is required if there has been "*some* harm." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). However, if no objection was

made, a reversal is warranted only if the error "resulted in 'egregious harm.'" *See Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008) (quoting *Almanza*, 686 S.W.2d at 171).

"Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). "The purpose of the egregious-harm inquiry is to ascertain whether the defendant has incurred actual, not just theoretical, harm," *Swearingen*, 270 S.W.3d at 813, and "reversal for an unobjected-to erroneous jury instruction is proper only if the error caused actual, egregious harm to" the defendant, *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). The determination depends "on the unique circumstances of" each case and "is factual in nature." *Saenz v. State*, 479 S.W.3d 939, 947 (Tex. App.—San Antonio 2015, pet. ref'd); *see Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002) (stating "that egregious harm is a difficult standard" to meet). Neither side has the burden of establishing either the presence or a lack of harm. *See Warner v. State*, 245 S.W.3d 458, 464 (Tex. Crim. App. 2008). Instead, the reviewing court makes "its own assessment" when evaluating what effect an error had on the verdict by looking at the record before it. *Ovalle v. State*, 13 S.W.3d 774, 787 (Tex. Crim. App. 2000). "When assessing harm based on the particular facts of the case, we consider (A) the entire jury charge; (B) 'the state of the evidence[,] including contested issues and the weight of the probative evidence'; (C) the parties' arguments; and (D) all other relevant information in the record." *Arrington*, 451 S.W.3d at 840 (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)). The analysis is "fact specific and is done on a 'case-by-case basis.'" *Id.* (quoting *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013)).

**DISCUSSION**

**Elements of Assault in the Abstract and Application Sections**

In his first issue on appeal, Williams contends that the district "court's jury charge authorized the jury to convict . . . Williams of the charged offense under a theory not authorized by Texas law." Specifically, Williams contends that there were errors in the jury charge instructing the jury that "it could convict . . . Williams of the charged offense if it found beyond a reasonable doubt that he committed an act of assault unrelated to strangulation" and "then committed an act of strangulation unrelated to the underlying act of assault." In other words, Williams insists that the charge allowed the jury to convict Williams of "the offense of Assault Family Violence by Strangulation . . . if he commit[ted] a misdemeanor assault causing bodily injury and proceeds, in a separate act, to choke the victim." Similarly, Williams argues that the charge improperly "allowed the jury to treat the strangulation allegation as an 'enhancement' rather than as the charged offense." In addition, although Williams concedes that he did not object to the language of the jury charge, he urges that the "error resulted in egregious harm."

As mentioned above, Williams was charged with assault family violence. Under the governing provisions of the Penal Code, an individual commits assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." *See* Tex. Penal Code § 22.01(a)(1). Moreover, "'[b]odily injury' means physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8). In addition, the Penal Code specifies that the offense level for an assault is elevated to that of a third-degree felony "if the offense is committed against . . . a person whose relationship to or association with the defendant is described" by the Family Code, including dating relationships,

6

and if "the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth." *Id.* § 22.01(b)(2)(B).

Regarding the abstract portion of the charge, rather than instruct the jury that "a person commits the offense of assault if he intentionally, knowingly, or recklessly causes bodily injury to a member of his family or household by impeding the normal breathing and circulation of the complainant's blood by applying pressure to their throat and neck or by blocking their nose and mouth with the use of hands," *see Halton v. State*, No. 05-14-00640-CR, 2015 WL 3991827, at *8 (Tex. App.—Dallas July 1, 2015, no pet.) (mem. op., not designated for publication), the charge at issue contained a paragraph setting out the offense of assault and contained another paragraph setting out the circumstances in which that assault could constitute assault family violence by strangulation. The second paragraph listed two conditional statements relating that assault "is a Felony Assault Family Violence if the" assault was committed "on a member of the defendant's family, household, or [someone] with whom the defendant has had a dating relationship" and "if the person intentionally, knowingly, or recklessly impedes the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth." This language potentially suggests that a conviction for the charged offense could be supported by proof that a defendant committed some type of assault against a victim causing bodily injury and by proof that the defendant also impeded the normal breathing or circulation of the victim.

Arguably, this might not be considered error if the second conditional would have stated that the defendant caused bodily injury by impeding the circulation or breathing of the

7

victim because the second paragraph would then have included the correct culpable mental state (intentionally, knowingly, or recklessly), have specified a victim falling within the scope of assault family violence (a member of the defendant's family or person with whom defendant had dating relationship), and have listed assaultive conduct causing bodily injury that involved impeding the breathing or circulation of the victim. *See* Tex. Penal Code § 22.01(a), (b)(2)(B). However, the second conditional did not include the phrase "caused bodily injury," and the court of criminal appeals has explained that the failure to include that phrase in a jury charge for assault can be error. *See Marshall v. State*, 479 S.W.3d 840, 843-45 (Tex. Crim. App. 2016) (discussing omission in application section of charge).

Although Williams contends that there are similar errors in the language of the application portion of the charge, we note, as discussed more thoroughly below, that the language and structure of the application section differs significantly. For purposes of deciding this issue on appeal, we will assume without deciding that there was error in the abstract and application portions of the jury charge and will, accordingly, examine whether Williams was egregiously harmed.

First, we look to the remainder of the jury charge. As set out above, the application portion of the jury charge contained two paragraphs bearing on this issue: the first paragraph pertained to assault, and the second paragraph pertained to assault by impeding normal circulation or breathing. Although Williams contends that those paragraphs contained errors similar to those allegedly present in the abstract section, the language of the application paragraphs differs from that found in the abstract section. The first paragraph instructed the jury to consider whether Williams caused bodily injury to Lee, who was a member of Williams's household or someone with whom

8

Williams had a dating relationship, by seizing Lee's neck with his hands. The second paragraph prompted the jury to decide whether Williams had impeded Lee's breathing or circulation by applying pressure to Lee's throat or neck with his hands. Although the second paragraph, like the abstract paragraph, does not contain the phrase "bodily injury," the second paragraph essentially asked the jury to determine whether the bodily injury caused by seizing Lee's neck also resulted in Lee's circulation or breathing being impeded.

In any event, the court of criminal appeals has explained that the failure to include the phrase "bodily injury" in a jury charge for a strangulation offense does not result in egregious harm because if a jury finds that an individual impeded the breathing or circulation of another, "the jury found bodily injury *per se*." *Id.* at 844. Accordingly, we conclude that the remainder of the jury charge weighs against a determination that Williams suffered egregious harm by the alleged error. *See Vasquez v. State*, 389 S.W.3d 361, 367 (Tex. Crim. App. 2012) (stating that application paragraphs are "heart and soul" of jury charge); *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999) (providing that "[w]here the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious").

Regarding the state of the evidence, we note that evidence regarding the assault was presented through several witnesses. Although Lee mentioned during her testimony that her head hit the bathroom mirror during the assault and mentioned being shoved to the ground, her testimony focused on her assertion that Williams strangled her. Specifically, Lee explained that Williams pulled her into the apartment by her neck with both of his hands and "grab[bed her] by [her] neck and choke[d her]." Further, Lee testified that she felt pain and could not breathe. In addition, Lee

9

related that Williams continued to strangle her as he moved her to different locations in the apartment. Moreover, Lee recalled that she begged Williams to stop, that he released her, that she ran to the bathroom, that he followed her into the bathroom, and that he started choking her again. Additionally, Lee testified that she could not breathe, that her neck hurt, and that she felt lightheaded, and Lee recalled that Williams threatened to kill her before releasing her and ordering her to leave the apartment.

After Lee finished her testimony, Lee's neighbor at the time of the assault, Joe Ann Haven, was called to the stand and explained that she had not interacted with Lee or Williams prior to the day of the offense and had not talked with either of them since the day in question. Regarding the alleged offense, Haven related that she saw Williams shove Lee down, tell Lee that he was going to kill her by choking her, and grab Lee "by her throat and shove[] her backwards inside of the apartment."

Next, Officer Matthew Nonweiler testified that he responded to a 911 call regarding a domestic dispute and that he talked with Lee after arriving at the apartment complex. Regarding his interaction with Lee, Officer Nonweiler explained that Lee was initially coughing an excessive amount and that the volume of her voice was initially quiet but increased over time. Additionally, Matthew Daves testified that he is a paramedic, that he drove to the apartment complex, that Lee told him that Williams choked her with his hands twice for fifteen to thirty seconds each time, that she was lightheaded, that she had pain in her throat and in the back of her neck, and that she was coughing. Following this testimony, Cheryl Bahktiari was called to the stand and explained that she is a paramedic instructor. In her testimony, she testified regarding, among other topics, the

10

physiological effects of being strangled, including becoming lightheaded, feeling the need to cough, and experiencing pain in the neck area.

In light of the focus of the testimonies on the alleged acts and effects of strangulation, we believe that the evidence in this case supports a determination that Williams was not egregiously harmed.

Turning to the arguments by the parties, the State asserted in its opening statement that Williams "put his hands around [Lee's] neck and he lifted her up, and she will tell you that she couldn't breathe." Further, the State asserted that Williams "continued to strangle" Lee as he moved her throughout the apartment, that Lee begged Williams to release her, that Williams complied but later started choking her again, and that Lee ran out of the apartment when Williams released her the second time. In his opening statement, Williams argued that the assault never occurred and that Lee lied to the police as a way to get back at him for being unfaithful.

During its closing argument, the State asserted that it had proved "all of the elements of assault family violence strangulation," summarized the testimony indicating that Williams placed his hands on Lee's throat and choked her, noted how Lee's testimony was consistent with Haven's testimony about the assault, and emphasized the testimony from the State's witnesses relating that strangulation might not result in injuries that can be seen. When discussing the term "bodily injury," the State argued that the element was met by evidence showing that Williams impeded Lee's "normal breathing or circulation."

In his closing argument, Williams did assert that Lee's testimony indicated that Williams assaulted her by throwing her to the ground, but Williams also continued his summary of

11

Lee's testimony by stating that Lee testified that Williams "grabbed her by the neck." Moreover, Williams argued that Lee fabricated these allegations to punish Williams, attempted to undermine Lee's testimony by asserting that there were inconsistencies between her testimony and the statements that she gave to the police and by asserting that portions of her testimony seemed implausible, argued that portions of the testimonies from the State's witnesses were not believable, asserted that there was no physical proof of any assault, insisted that the State failed to prove that Williams impeded Lee's circulation or breathing, and urged the jury to either find Williams not guilty of any offense or, alternatively, to find that Williams was only guilty of simple assault, not assault by strangulation. In light of the focus of the parties' arguments, we believe that the parties' arguments in this case support a determination that Williams was not egregiously harmed.

Finally, nothing in the remainder of the record indicates that Williams suffered egregious harm in this case. During voir dire, the State did assert that an individual was guilty of the charged offense if he "[i]ntentioanlly, knowingly, or recklessly caused bodily injury" to another and "impeded the normal breathing or circulation of the blood by applying pressure to the person's throat or neck," but the State did not relate that the assault causing bodily injury could involve conduct other than strangulation. In addition, the district court did mention during voir dire that strangulation has a "separate definition" from that for a general assault and that the jury would "have to separate the two as far as strangulation is occurring," but it is not entirely clear what those statements were intended to convey to the jury or that the district court was indicating that an individual could be convicted of assault by strangulation without all of the elements of the governing

12

statute being satisfied.[3]  In any event, even if those statements were erroneous and suggested that Williams could be convicted of the offense in a manner not authorized by statute, we are not persuaded that Williams was egregiously harmed given our resolution of the remaining factors discussed above regarding the language of the entirety of the jury charge, the evidence presented, and the arguments by the parties.

For these reasons, we conclude that the alleged errors in the jury charge did not egregiously harm Williams and, accordingly, overrule Williams's first issue on appeal.

**Omission of Phrase "Bodily Injury"**

In his second issue on appeal, Williams contends that there was an additional error in the jury charge.  Specifically, Williams refers to the paragraph in the application section instructing the jury to find Williams guilty of the charged offense if they determine that he impeded Lee's normal breathing or circulation, and Williams notes that the paragraph does not contain the phrase "bodily injury."  Consistent with his arguments from the first issue, Williams contends that the

---

[3] In his brief, Williams points to various exchanges that occurred during the charge conference that he asserts "indicates confusion among the court and the parties regarding the elements of the charged offense."  During those exchanges, the parties and the district court discussed the propriety of having the strangulation allegation listed separately from the portion of the charge covering assault causing bodily injury, but those discussions did not occur in front of the jury.  Accordingly, we are not persuaded that those comments could have caused Williams egregious harm.

In addition, Williams refers to a statement by the district court in which it stated that the jury "found . . . Williams guilty of the offense of felony assault family violence with strangulation allegations" and argues this was improper because the offense is "assault by means of strangulation."  However, even assuming that the district court's characterization of the conviction was improper, the statement was made after the jury considered the charge and found Williams guilty of the alleged offense.

13

omission "allowed the jury to 'bootstrap' bodily injury which would be applicable" in the first paragraph of the application section "(but not applicable to [the second paragraph]) into its consideration of whether . . . Williams committed the charged offense" and further asserted that evidence of Lee experiencing pain when she was grabbed by the back of the neck or when her head hit the bathroom mirror could have improperly served as the bodily injury upon which the jury reached its verdict. Finally, although Williams admits that he made no objection on the grounds presented on appeal, he urges that he was egregiously harmed by the error.

In the previous issue, we addressed the omission of the phrase "bodily injury" and noted that the court of criminal appeals has determined that the omission of that phrase from an application paragraph did not result in egregious harm. *See Marshall*, 479 S.W.3d at 844; *see also id.* at 843 (noting that "[e]gregious harm is a difficult standard to meet"). In light of that ruling as well as our resolution of the factors for assessing harm set out in the first issue, we similarly conclude that any error from the omission did not egregiously harm Williams.

For these reasons, we overrule Williams's second issue on appeal.

**Lesser Included Offense**

In his third issue on appeal, Williams contends that there was error in the jury charge because the charge instructed the jury to first consider whether Williams was guilty of the lesser-included offense of assault before considering whether Williams was guilty of the more serious offense of assault by strangulation, and Williams insists that this type of "instruction contravenes Texas law and constitutes error." Stated differently, Williams argues that the jury charge did not instruct the jury to read the charge as a whole "and instead instructed the jury to consider the offenses

14

submitted to it . . . in a particular order," and Williams urges that this "prevented full and fair jury deliberation." In addition to contesting the order in which the offenses were listed in the jury charge, Williams asserts that there was error in the charge because the lesser-offense instruction listed all of the elements for the lesser offense but that the greater-offense instruction only listed some of the elements for that offense. Moreover, Williams insists that a proper jury charge "should distinguish the lesser from the greater offense" and should include "all the elements of the charged offense in the application paragraph." Regarding these alleged errors, Williams argues that they "vitally affected" his defensive theory that "he was guilty only of misdemeanor assault." Finally, Williams asserts that the effect of these errors was intensified by the lack of an instruction informing the jury that if they believed beyond a reasonable doubt that Williams was guilty of either assault or assault by strangulation but had a reasonable doubt as to which offense, then the jury should resolve that doubt in his favor and find him guilty of the lesser offense.[4]

As support for the idea that a jury charge should instruct a jury to first consider whether a defendant is guilty of a greater offense before addressing his guilt for any lesser offenses, Williams primarily relies on prior cases from the court of criminal appeals and from provisions of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. arts. 37.08, .14; *Barrios v. State*, 283 S.W.3d 348 (Tex. Crim. App. 2009); *Boyett v. State*, 692 S.W.2d 512 (Tex. Crim. App. 1985). However, it is not entirely clear that the cited authority supports Williams's argument.

---

[4] It does not appear from the record that Williams requested a benefit-of-the-doubt instruction. *See Mathis v. State*, No. 02-06-00355-CR, 2007 WL 2963718, at \*4 (Tex. App.—Fort Worth Oct. 11, 2007, pet. ref'd) (not designated for publication) (noting that "[a]s a general rule, if evidence in a case leaves a reasonable doubt as to the grade or degree of the offense, *upon a request by the defendant*, the trial court must give the jury a 'benefit of the doubt' instruction" (emphasis added)).

Regarding the statutes, article 37.08 provides that a "jury may find the defendant not guilty of the greater offense, but guilty of any lesser included offense." Tex. Code Crim. Proc. art. 37.08. However, that provision does not specify any order in which those determinations need to be made. Article 37.14 states that if a defendant is "convicted of an offense lower than that for which he is indicted" and if a new trial is ordered, "the verdict upon the first trial shall be considered an acquittal of the higher offense" but that the defendant in the new trial may "be convicted of the same offense of which he was before convicted" or any lesser offenses. *Id.* art. 37.14. That provision, like article 37.08, does not state that it is error for a jury charge to list a lesser-included offense first.

In *Barrios*, the court addressed an issue alleging that there was error in a jury charge where the charge informed the jury that if it had a reasonable doubt about whether the elements of capital murder had been satisfied, the jury should "acquit the defendant of capital murder and next consider whether the defendant is guilty of [the lesser offense of] robbery." 283 S.W.3d at 349. The charge also contained an instruction providing that if it believed beyond a reasonable doubt that the defendant was guilty of either capital murder or robbery but had a reasonable doubt as to which offense, the jury must resolve its doubt by finding the defendant guilty of the lesser offense. *Id.* at 350.

When discussing whether there was error in the jury charge, the court explained that "[j]uries make many decisions while in the jury room, most of which are not announced to the court," and that "[i]n making decisions such as the method of discussion, . . . the jury is left to its own devices." *Id.* at 352. Further, the court noted that "the order in which the parts of the jury charge are considered [is] left to the discretion of the jury." *Id.* Additionally, the court observed that

16

trial courts read "the entire charge to the jury before it retires to deliberate" and that the jury, therefore, will "have heard the instruction on the benefit of the doubt before considering the issue of guilt on any of the offenses included in the charge." *Id.* at 353. Accordingly, the court determined that "even if, and perhaps especially if, the jurors cannot agree as to guilt on the greater offense," they have essentially "been instructed that they may consider guilt as to the lesser offense before deciding on a verdict as to the greater offense." *Id.* The court also concluded that "the charge allowed the jury to consider the entire charge as a whole and that the complained-of instruction does not require the jury to unanimously agree that a defendant is not guilty of the greater offense before considering a lesser-included offense." *Id.* When identifying some problematic language in the jury charge, the court observed that it might be "a better practice . . . to include an instruction that explicitly informs the jury that it may read the charge as a whole" and to include language that "if you are unable to agree [regarding the greater offense], you will next consider" the lesser offenses. *Id.*

In *Boyett*, the jury charge included "instructions on murder, voluntary manslaughter, involuntary manslaughter[,] and criminally negligent homicide." 692 S.W.2d at 515. The defendant argued that the jury charge was improper because it did not have an instruction that the jury should acquit him "of a greater offense before considering his guilt of a lesser offense." *Id.* On appeal, the court determined that the charge "essentially instructed the jurors to acquit, without specifically using the word 'acquit,' by stating that if the jurors had a reasonable doubt as to the guilt of appellant to the greater offense, they should next consider the lesser included offense." *Id.* at 516.

As with the statutes discussed above, we do not read the language from these cases as suggesting that a jury charge is erroneous simply because it lists a lesser-included offense before

17

listing the greater offense. *Cf. Barrios*, 283 S.W.3d at 353 (noting that if juries cannot agree regarding greater offense, they "may consider guilt as to the lesser offense before deciding on a verdict as to the greater offense"). Accordingly, although the ordering of the jury charge is unusual, we are not persuaded that the unusual order, without more, constitutes error.

Moreover, we note that the jury charge in this case was read in its entirety to the jury before they began their deliberations, and they were, therefore, aware of the greater and lesser offenses listed in the charge. As set out earlier, the jury charge in this case asked the jury to first consider whether Williams intentionally, knowingly, or recklessly caused Lee bodily injury by "seizing [her] on or about the throat or neck with" his hands and whether Lee was a member of Williams's "family or household" or was an individual with whom Williams "had a dating relationship." The charge then instructed the jury that if they found beyond a reasonable doubt that Williams committed the offense, then Williams was guilty of committing assault and that the jury should then consider whether Williams was guilty of the greater offense. Alternatively, the jury charge explained that if the jury "had a reasonable doubt" regarding whether Williams committed the lesser offense, then the jury should skip the portion of the charge addressing the greater offense and consider the remaining instructions, including the directive to acquit the defendant if they had "a reasonable doubt as to the defendant's guilt."

Regarding the greater offense, the charge specified that if the jury determined beyond a reasonable doubt that Williams intentionally, knowingly, or recklessly impeded Lee's "normal breathing or circulation" during the assault, then the jury should find him "guilty of the offense of Felony Assault Family Violence by Impeding Normal Breathing." Finally, the charge explained

18

that if the jury had a reasonable doubt about Williams's guilt, they must "acquit" Williams of the greater offense.

Accordingly, although the elements for the two offenses were divided into separate paragraphs, the jury charge essentially instructed the jury to convict Williams of assault family violence by strangulation only if the jury determined that all of the elements for that offense were established beyond a reasonable doubt, to convict Williams of the lesser offense of assault if the jury had a reasonable doubt regarding whether Williams impeded Lee's circulation or breathing but believed beyond a reasonable doubt that the elements of the lesser offense of assault had been proven beyond a reasonable doubt, and to acquit Williams entirely if the elements of the lesser offense were not established beyond a reasonable doubt.

Moreover, although Williams asserts that the absence of a "benefit of the doubt" instruction could have compounded any potential error in the jury charge, in light of the language of the charge discussed above, it is not entirely clear that this type of instruction would have been necessary even if Williams had asked for one. *Cf. Mathis v. State*, No. 02-06-00355-CR, 2007 WL 2963718, at *5 (Tex. App.—Fort Worth Oct. 11, 2007, pet. ref'd) (not designated for publication) (determining that "no additional 'benefit of the doubt' instruction was necessary" and "that the trial court did not err in refusing the instruction" where application portion instructed jury to consider "whether it found beyond a reasonable doubt that the appellant was guilty of the offense of capital murder," to acquit defendant of that offense if they had reasonable doubt, to consider whether defendant was guilty of lesser offense, and to acquit defendant of lesser offense "as well" if they had reasonable doubt regarding defendant's guilt for lesser offense); *Stewart v. State*,

19

No. 14-95-01391-CR, 1999 WL 219398, at *7 (Tex. App.—Houston [14th Dist.] Apr. 15, 1999, no pet.) (not designated for publication) (concluding that trial court did not err in denying request for benefit-of-doubt instruction where jury charge had functional equivalent and left "no uncertainty as to how to resolve the doubt or where the burden of proof lies").

For these reasons, it is not entirely clear that there is error in the jury charge.

Assuming for the sake of argument that there was error in the jury charge, we would be unable to conclude that Williams was egregiously harmed.[5] As set out above, although the elements of the greater offense were split between two paragraphs, the charge instructed the jury to convict Williams of the greater offense only if all of the elements of that offense had been proven beyond a reasonable doubt, to find Williams not guilty of the greater offense if the jury did not believe that Williams impeded Lee's breathing or circulation, to convict Williams of the lesser offense only if the elements of that offense were proven beyond a reasonable doubt, and to acquit Williams of the lesser offense if the jury determined that the elements of that offense had not been proven beyond a reasonable doubt. Furthermore, as discussed earlier, the evidence presented at trial indicated that Williams had committed the greater offense of assault family violence by strangulation. Moreover,

[5] In his brief, Williams admits that he did not present this argument to the district court, but he argues that the alleged error should be reviewed to ascertain whether he was caused "some harm" rather than "egregious harm" because, according to him, the district court's decision to split the elements into the two paragraphs "effectively denied [his] request for a lesser-included instruction." *See Jimenez v. State*, 419 S.W.3d 706, 712 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (explaining that appellate courts review denial of "requested instruction for a lesser-included offense" by considering whether defendant suffered some harm). However, in light of the record before this Court, particularly the language of the jury charge setting out a greater and a lesser offense of assault, we cannot agree with Williams's assertion that his request for a lesser-included-offense instruction was essentially denied. Accordingly, we review the alleged charge error to determine whether Williams suffered egregious harm.

20

the parties' arguments during the trial do not support a determination that the alleged charge error egregiously harmed Williams. Accordingly, assuming that there was error in the jury charge, we would be unable to sustain his issue on appeal.

For all of these reasons, we overrule Williams's third issue on appeal.

**Double Jeopardy**

In his fourth issue on appeal, Williams again points to the order of the paragraphs of the jury charge, notes how the jury was instructed to consider the lesser offense before considering the charged offense, highlights that the verdict form directed the jury to specify whether Williams was guilty or not guilty of the offense of assault causing bodily injury before considering whether Williams was also guilty of committing "the offense of Felony Assault Family Violence by Impeding Normal Breathing," repeats his arguments that juries are prohibited from convicting a defendant of a lesser-included offense unless the jury first determines that the defendant is not guilty of the charged offense, and insists that "[t]he jury's verdict of 'guilty' on the lesser-included offense of misdemeanor assault operated as both an acquittal of the charged offense . . . and a bar to the prosecution of that offense." *See White v. State*, 509 S.W.3d 307, 311 n.6 (Tex. Crim. App. 2017) (observing that greater and lesser offenses "are 'the same' for double jeopardy purposes" (quoting *Hall v. State*, 225 S.W.3d 524, 533 & n.40 (Tex. Crim. App. 2007))); *see also Brown v. Ohio*, 432 U.S. 161, 166 (1977) (discussing double jeopardy in context of greater and lesser offenses). In other words, Williams contends that his conviction for the greater offense constitutes a double-jeopardy violation because the jury, according to Williams, had already determined that he was guilty of the lesser offense. In light of these arguments, Williams insists that even though the usual

21

remedy in circumstances in which a defendant has been convicted of both greater and lesser offenses "is to affirm the conviction for the most serious offense and vacate the other convictions," *see Dawkins v. State*, No. 08-09-00217-CR, 2011 WL 1312285, at *3-4 (Tex. App.—El Paso Apr. 6, 2011, no pet.) (not designated for publication), the judgment in this case should be reformed to reflect a conviction for the lesser assault because the jury convicted him "of a lesser-included offense before considering the charged, greater offense."

In this issue, Williams admits that he presented no double-jeopardy complaint to the district court, *see Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000) (explaining that, in general, defendant has burden to preserve double-jeopardy objection), but asserts that the issue may be presented for the first time on appeal because "the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and" because "enforcement of usual rules of procedural default serves no legitimate state interests," *see id.* at 643. Regarding the face of the record, Williams contends that the record demonstrates that the jury charge and verdict form directed the jury to consider whether Williams was guilty of the lesser offense first and that the jury followed those instructions and found Williams guilty of the lesser offense before considering whether Williams was guilty of the greater offense. Regarding the rules of procedural default, Williams urges that those rules should not apply because there is "no legitimate interest in maintaining a conviction when it is clear on the face of the record that the conviction was obtained in contravention of constitutional double-jeopardy protections." *See Ex parte Denton*, 399 S.W.3d 540, 545 (Tex. Crim. App. 2013).

However, we cannot conclude that a double-jeopardy violation is clearly apparent from the face of the record. The "Double Jeopardy Clause protects criminal defendants from three

22

things: 1) a second prosecution for the same offense after acquittal; 2) a second prosecution for the same offense after conviction; and 3) multiple punishments for the same offense." *Ex parte Milner*, 394 S.W.3d 502, 506 (Tex. Crim. App. 2013). Although Williams correctly points out that the jury charge directed the jury to consider whether Williams was guilty of the lesser offense before addressing whether the additional elements from the greater offense were also proven beyond a reasonable doubt, those determinations were all made as part of the same trial. Accordingly, Williams has not been subjected to a second prosecution after an acquittal or after a conviction. Moreover, Williams was not subjected to multiple punishments for the same offense because he was only punished once when the district court imposed its sentence for the greater offense.

For these reasons, we cannot conclude that a double-jeopardy claim is clearly apparent on the face of the record, and we overrule Williams's fourth issue on appeal.

**Verdict Form**

In his fifth issue on appeal, Williams argues that "[t]he verdict form provided to the jury failed to provide an option for the jury to find [him] 'guilty' or 'not guilty' of the charged offense." As set out earlier, the verdict form instructed the jury to specify whether Williams was "guilty or not guilty" of assault and then to mark "Yes" or "No" regarding whether Williams committed the offense of assault family violence by impeding normal breathing. The jury entered a guilty verdict in the first portion and checked "Yes" in the second portion.

In light of the structure and language of the verdict form, Williams urges that the verdict form eliminated "the 'guilty' and 'not guilty' options regarding the charged offense" and "prevented the jury from carrying out the court's instruction to find [him] 'guilty' or 'not guilty.'"

In this issue, Williams again concedes that no objection was presented to the district court but contends that he was egregiously harmed by the alleged error. Further, Williams asserts that the alleged harm in this case is exacerbated by the alleged errors discussed in his other issues.[6]

Under the Code of Criminal Procedure, if a defendant pleads not guilty, the jury "must find that the defendant is either guilty or not guilty." Tex. Code Crim. Proc. art. 37.07, § 1(b). In addition, a "trial judge is required to instruct the jury that it may return either a 'guilty' or 'not guilty' verdict to all counts of the charged offenses and to any lesser-included offenses that are submitted to the jury." *Jennings v. State*, 302 S.W.3d 306, 309 (Tex. Crim. App. 2010). Similarly, although "a trial judge need not attach a verdict form to the jury charge," if the trial court chooses to do "so, it must set out every 'guilty' or 'not guilty' option that is available to the jury." *Id.* at 310. Further, "it is 'improper' to submit a verdict form that omits any 'guilty' or 'not guilty' option that is available to the jury." *Id.*

As an initial matter, we note that like other portions of the jury charge in this case, the verdict form is indeed unusually written. Although the wisdom of structuring the verdict form in the manner chosen and of deciding to use the words "yes" and "no" rather than "guilty" and "not

---

[6] At the end of the portion of his opening brief addressing this issue, Williams also contends that the alleged error denied him "his fundamental right to be sentenced in accordance with the jury's verdict," but Williams does not appear to provide additional explanation regarding how the alleged error deprived him of that right. Moreover, the case that he cites as support for this proposition discussed how trial courts do not have the authority to change a verdict by the jury under most circumstances and explained that "any potential ambiguity" in the trial court's oral pronouncement "is resolved in favor of the jury verdict." *See Kimble v. State*, No. 02-15-00370-CR, 2016 WL 2840922, at *2 (Tex. App.—Fort Worth May 12, 2016, pet. ref'd) (mem. op., not designated for publication). Accordingly, that case would seem to have little applicability to the issue presented here. Moreover, nothing in the record before this Court indicates that the district court rendered a judgment of conviction that was not in accordance with the jury's verdict.

guilty" can certainly be debated, it is not entirely clear that any "guilty" or "not guilty" option was omitted from the verdict. The options available under the jury charge were to find Williams guilty of the greater offense, to find Williams not guilty of the greater offense but guilty of the lesser offense, and to find Williams not guilty of either offense. Similarly, the verdict form authorized the jury to find Williams not guilty of either offense by entering a verdict of not guilty in the first portion of the form, to find Williams guilty of the lesser offense but not guilty of the greater offense by entering a verdict of guilty in the first portion and entering a determination of "no" in the second portion addressing whether Williams committed the greater offense, and to find Williams guilty of the greater offense by entering a guilty verdict in the first portion and entering a "yes" determination in the second portion. *See Lopez v. State*, No. 03-11-00086-CR, 2013 WL 4487555, at \*8 (Tex. App.—Austin Aug. 15, 2013, no pet.) (mem. op., not designated for publication) (noting that it is "true that '[v]erdicts should receive a liberal rather than a strict construction, and if the finding of the jury can be reasonably ascertained, from whatever source, the verdict should be held valid'" (quoting *Ainsworth v. State*, 517 S.W.2d 274, 277 (Tex. Crim. App. 1975))).

Even assuming that there was error in the verdict form, we would be unable to conclude that Williams suffered egregious harm from that error. As set out earlier, the jury charge instructed the jury to find Williams guilty of the lesser offense if the jury was persuaded beyond a reasonable doubt that all of the elements for that offense had been met, to find Williams guilty of the greater offense if it was also persuaded beyond a reasonable doubt that the additional elements for the greater offense had been met, and to acquit Williams of both offenses if they jury had reasonable doubt regarding whether Williams committed those offenses. Additionally, although worded in an

25

unusual manner, all of those options were included in the verdict form. Moreover, the evidence presented at trial indicated that Williams was guilty of the greater offense, and the parties did not address the language of the verdict form in their arguments. Furthermore, although we assumed for the sake of argument that some of the alleged charge infirmities discussed in Williams's other issues on appeal did constitute errors, we also determined that those alleged errors did not egregiously harm Williams, and we do not believe that any cumulative effect from the other alleged errors occurred under the circumstances present here. Accordingly, even if there was error in the verdict form, we would not be able to conclude that Williams suffered egregious harm as a result of that alleged error.

For all of these reasons, we overrule Williams's fifth issue on appeal.

**Informal Verdict**

In his final issue on appeal, Williams asserts that his sentence was improperly based on an informal verdict and that the district "court committed error by receiving the incomplete and unresponsive verdict of the jury." More specifically, Williams contends that the verdict was informal because the jury did not return a "guilty" or "not guilty" verdict and instead returned a verdict that stated "Yes" next to whether he committed the greater offense. *See* Tex. Code Crim. Proc. art. 37.07, § 1(b). Additionally, Williams contends that he was harmed by the district court's acceptance of this allegedly informal verdict and that the judgment of conviction should be reversed in light of this error and the other alleged errors that Williams asserted in his other appellate issues.

Under article 37.10 of the Code of Criminal Procedure, "[i]f the verdict of the jury is informal," the jury will be informed of that fact, "and with its consent the verdict may, under the direction of the court, be reduced to the proper form." *Id.* art. 37.10(a). "If the jury refuses to have

26

the verdict altered, it shall again retire to its room to deliberate, unless it manifestly appear that the verdict is intended as an acquittal; and in that case, the judgment shall be rendered accordingly, discharging the defendant." *Id.* Moreover, trial courts have a duty to reject insufficient or informal verdicts. *See Nixon v. State*, 483 S.W.3d 562, 567 (Tex. Crim. App. 2016). "The general rule is that a jury's verdict should be held good if the jury's intention can reasonably be ascertained." *Perez v. State*, 21 S.W.3d 628, 631 (Tex. App.—Houston [14th Dist.] 2000, no pet.). If a jury finding "can be reasonably ascertained" under a liberal construction, "the verdict is sufficient." *Id.*

As an initial matter, it is not entirely clear that the alleged error in this case could have rendered the verdict informal. When the court of criminal appeals discussed how article 37.10(a) was "a vestige of a time when verdict forms were not used with regularity," it also observed that an informal verdict is "'one that does not meet the legal requirements of being written or answered as authorized.'" *Nixon*, 483 S.W.3d at 566 (quoting *Jennings*, 302 S.W.3d at 309). It is not entirely clear that this definition could apply to the verdict in this case because the verdict here contained a written determination (Williams's guilt) that was authorized by law and because the jury completed all answers that they were required to in the charge. Furthermore, cases stating that a verdict was informal have generally involved circumstances different from those present here. *See, e.g.*, *Reese v. State*, 773 S.W.2d 314, 317-18 (Tex. Crim. App. 1989) (determining that trial court correctly sent "the jury back for further deliberations" when jury did not provide verdict for one offense and when verdict forms by jury were "in conflict and insufficient"); *Woodard v. State*, 898 S.W.2d 4, 5 (Tex. App.—San Antonio 1995, pet. ref'd) (observing that stipulation written by jury that defendant "enter drug rehabilitation as part of his sentence" was informal and incorrect). Perhaps more importantly,

27

the verdict form and verdict made by the jury can reasonably be construed as a finding that Williams was guilty of the greater offense.

Even assuming that the jury's verdict was informal and that the district court should not have accepted the verdict, we would still be unable to sustain this issue. Because this type of "alleged error is not constitutional in nature," the error "is subject to a 'harmless error' review." *Perez*, 21 S.W.3d at 631 (noting that defendant did not object on grounds that verdict was improperly informal and addressing issue for harm). Accordingly, the error must be disregarded unless it affected the defendant's "substantial rights." Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Gonzalez v. State*, 541 S.W.3d 306, 313 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Stated differently, "an error does not affect a substantial right if we have 'fair assurance that the error did not influence the jury, or had but a slight effect.'" *Id.* (quoting *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001)). "In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case." *Id.* at 314. "We also may consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable." *Id.*

As summarized previously, the evidence presented at trial, including that from a disinterested neighbor, strongly suggested that Williams was guilty of the charged offense. Moreover, although the verdict form asked the jury to answer "Yes" or "No" to whether Williams

committed the charged offense, the jury instructions directed the jury to find Williams guilty of that offense only if they were persuaded beyond a reasonable doubt that the elements of that offense were met. In addition, neither the State nor Williams suggested in their arguments that the yes-or-no determination was somehow different than a guilty-or-not-guilty determination. On the contrary, the State argued that it had established the elements of the offense beyond a reasonable doubt, including that Williams caused bodily injury to Lee and impeded her normal circulation or breathing by strangling Lee, and Williams argued that the State had not met its burden. Moreover, as set out above, Williams incorporates in this issue the prior arguments that he made asserting that there were other errors in the jury charge and urges that those errors along with statements made by the parties and the district court purportedly pertaining to those errors show that he was harmed by the district court's acceptance of an informal conviction in this case; however, we have previously determined that the alleged errors did not egregiously harm Williams, and we are not persuaded by Williams's suggestion that those alleged errors and statements when paired with the allegedly informal nature of the verdict affected his substantial rights. Accordingly, we believe that the error, if any, did not result in harm warranting reversal of his conviction.

For all of these reasons, we overrule Williams's sixth issue on appeal.

**Clerical Error**

Although Williams does not raise this on appeal, we observe that the judgment of conviction contains a clerical error. The judgment reflects that the offense level in this case was a second-degree felony. Although the punishment range was enhanced to that of a second-degree felony due to Williams's prior felony conviction for murder, *see* Tex. Penal Code § 12.42(a),

the actual offense level for the assault charged in this case is a third-degree felony, *see id.* § 22.01(b)(2)(B) (providing that assault is third-degree felony if relationship between victim and defendant is governed by provisions of Family Code and if defendant commits offense by impeding normal breathing or circulation of victim); *see also Ford v. State*, 334 S.W.3d 230, 234 (Tex. Crim. App. 2011) (explaining that section 12.42 of Penal Code "increases the punishment level only").

This Court has the authority to modify incorrect judgments when it has the information necessary to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). Accordingly, we modify the judgment to reflect that Williams was convicted of a third-degree felony.

## CONCLUSION

Having modified the district court's judgment to reflect that Williams was convicted of a third-degree felony, we affirm the district court's judgment of conviction as modified.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Bourland

Modified and, as Modified, Affirmed

Filed: July18, 2018

Do Not Publish